STATE OF NORTH CAROLINA v. JACQUELINE RUTH HUNTER

No. 10A85

(Filed 7 January 1986)

1. **Assault and Battery § 15.2— assault with a deadly weapon—instruction on self-defense not required**

    The trial court did not err in a prosecution for assault with a deadly weapon by refusing to instruct on self-defense where defendant's evidence showed at most that the victim committed nonfelonious assaults and employed only nondeadly force against defendant; immediately prior to the stabbing defendant, who was safely away from the victim and perfectly free to remain in a safe place, borrowed a knife and returned to the victim's presence displaying the knife; and there was no evidence that at the time defendant attacked the victim she was in actual or apparent danger of death or great bodily harm.

2. **Criminal Law § 146.2— lack of findings to support probation condition—not raised on appeal by defendant—presented on the face of the record**

    The issue of whether the trial court erred when sentencing defendant for assault with a deadly weapon by failing to make findings of fact when imposing a condition for probation was properly presented for appellate review because defendant's appeal standing alone presented the face of the record for review, the judgment is a part of the record, and the judgment disclosed the lack of findings. N.C. Rule of App. Procedure 9(a)(3)(vii).

3. **Criminal Law § 142.2— restitution as condition of probation—no findings—no error**

    The trial court did not err when sentencing defendant for assault with a deadly weapon by including without findings a condition of probation that defendant pay the victim's medical bills not covered by insurance. The court knew the defendant's age, her relationship to the victim, that she resided with her mother, that she was indigent for legal purposes, and that the victim's family had insurance of uncertain scope. N.C.G.S. 15A-1343 does not require the trial judge to find and enter facts when imposing a judgment of probation; rather, it requires the court to take into consideration the resources of the defendant, her ability to earn, her obligation to support dependents, and other such matters pertaining to her ability to make restitution or reparation. N.C.G.S. 15A-1341(c), N.C.G.S. 15A-1345(e).

APPEAL by defendant pursuant to N.C.G.S. § 7A-30(2) from the decision of the Court of Appeals (*Judge Eagles* with *Judge Braswell* concurring and *Judge Webb* dissenting) reported in 71 N.C. App. 602, 323 S.E. 2d 43 (1984), reversing judgment of *Allsbrook, J.*, entered at the 28 July 1983 Criminal Session of PITT County Superior Court. We allowed the Attorney General's petition for writ of certiorari on 7 May 1985.

Defendant was charged in a bill of indictment with assault upon Sam Ward with a deadly weapon with intent to kill resulting in serious injury. The trial judge submitted possible verdicts of guilty of assault with a deadly weapon or not guilty. The jury returned a verdict of guilty of assault with a deadly weapon. Judge Allsbrook imposed a sentence of six months imprisonment, suspended the sentence, and placed defendant under supervised probation for a period of three years. One of the conditions of probation was that defendant pay the medical expenses incurred by Sam Ward which were not paid by medical insurance, not to exceed $806.25 to Pitt Memorial Hospital and $113.00 to Dr. John Winstead. All costs were to be paid by defendant under the supervision and direction of defendant's probation officer. Defendant appealed and the Court of Appeals reversed and remanded for rehearing as to the award of restitution for medical expenses. The State brought forward the sole question of whether the Court of Appeals erred by reversing the trial judge's restitution order.

*Lacy H. Thornburg, Attorney General, by Michael Smith, Associate Attorney, for the State.*

*Arthur M. McGlauflin, Attorney for defendant-appellee.*

BRANCH, Chief Justice.

Defendant's appeal presents the question of whether the Court of Appeals erred in failing to find error in the trial judge's refusal to instruct on self-defense. The State offered evidence tending to show that on the night of 11 March 1983 Sam Ward was sitting at a table with Loretta Cameron in a disco club called "The Cave." Defendant, a sixteen year old girl, was Ward's former girlfriend and he was the father of her sixteen month old child. Ward testified that he "felt somebody hitting in his side" and when he looked around he observed defendant swinging her arm. He pushed her to the floor and noticed that defendant had a three inch lock blade knife in her hand. The victim then saw a wound in his thigh and at that point he slapped defendant.

Defendant testified that Ward had assaulted her several times on that day. She further testified:

[Ward] saw me talking to Nicky and called me over there to him. I wouldn't go because I knew what he was going to do.

And he came up there to me and hit me beside of the head with his fist. . . . Then I told him I was going to get him because I was tired of him hitting on me. . . . Aaron asked me to dance. And when I came back and sat down I started talking and chatting with Nicky. I came to [Ward]—because he hollered clear over there—and I went over there to him, and then he started punching me in my stomach. And I said, . . . I am going to get you because I am tired of this. . . . I was tired of [Ward] beating on me. I went to see some dude I had met that night. I asked him did he have a pocketknife. I said I had to cut something off my shirt. I went to [Ward], and [he] was looking at me when I went to him. And then as soon as I got to him [Ward] saw the knife and then that is when he punched me in my face. I fell.

When asked why she cut Ward she replied, "I was tired of him beating on me."

[1] Under the law of this State, there is a distinction between a person's right of self-defense in repelling a felonious assault and a misdemeanor assault. *State v. Anderson*, 230 N.C. 54, 51 S.E. 2d 895 (1949). More specifically, this difference lies in the amount of force which may be used to fend off an attack. Except for certain assaults against "handicapped persons" which are deemed felonious under N.C.G.S. § 14-32.1(e), a felonious assault involves the use of a deadly weapon and the intent to kill or the infliction of serious injury. N.C.G.S. § 14-32 (1981). Other assaults are nonfelonious. N.C.G.S. § 14-33 (1981 & Cum. Supp. 1985).

To repel a felonious assault, a defendant may employ deadly force in his defense but only if it reasonably appears necessary to protect himself against death or great bodily harm. *State v. Clay*, 297 N.C. 555, 256 S.E. 2d 176 (1979), *overruled on other grounds, State v. Davis*, 305 N.C. 400, 290 S.E. 2d 574 (1982). Deadly force has been defined as "force likely to cause death or great bodily harm." *Id.* at 563, 256 S.E. 2d at 182. Although a defendant need not submit in meekness to indignities or violence to his person because the affront does not threaten death or great bodily harm, he may not resort to the use of deadly force to protect himself from mere bodily harm or offensive physical contact. *Id. See also, State v. Anderson*, 230 N.C. at 56, 51 S.E. 2d at 897. The use of deadly force to prevent harm other than death or great bodily

harm is therefore excessive as a matter of law. *Clay*, 297 N.C. at 563, 256 S.E. 2d at 182.

Applying the above principles to the facts of this case, we find that the evidence when taken in the light most favorable to defendant does not require an instruction on self-defense. The knife with a three-inch blade used by defendant against Ward amounted to deadly force since it was likely to cause death or great bodily harm. Even if defendant's evidence regarding Ward's despicable conduct on the day and the night of the stabbing is believed, defendant's evidence shows that he at most committed nonfelonious assaults and employed only nondeadly force against defendant. Immediately prior to the stabbing, defendant, who was safely away from the victim and perfectly free to remain in a safe place, borrowed a knife and returned to the victim's presence displaying the knife. There is no evidence at the time defendant attacked Ward that she was in actual or apparent danger of death or great bodily harm justifying her use of a deadly weapon. Defendant testified that she told Ward that she was going "to get him because I was tired of him hitting on me." When asked by her counsel on direct examination why she cut Ward, she replied, "I was tired of him beating on me and he knocked me up beside my head." Thus, defendant's own evidence reveals that the amount of force she used against Ward was excessive and that in any event she was not acting in self-defense when she attacked Ward.

Furthermore, a person is entitled under the law of self-defense to harm another only if he is "without fault in provoking, or engaging in, or *continuing a difficulty with another." State v. Anderson*, 230 N.C. at 56, 51 S.E. 2d at 897 (emphasis added). The uncontradicted evidence produced at trial reveals that after Ward's assault had ended defendant armed herself and marched back over to him to continue the difficulty between them. It was only after Ward had seen defendant come at him with a knife that he was provoked into assaulting her further.

Because there was no evidence presented which tended to show that defendant was entitled under the law of self-defense to attack Ward with the force and at the time chosen by her, we hold that the trial court properly refused to instruct the jury on the law of self-defense. This assignment of error is overruled.

[2] The State argues that the Court of Appeals erred by reversing and remanding for hearing the question of restitution. The first prong of the State's argument is that defendant did not properly preserve or present the issue of restitution for appellate review. We disagree.

Defendant's appeal, standing alone, presents the face of the record for review. *State v. Kirby*, 276 N.C. 123, 171 S.E. 2d 416 (1970). The judgment is, of course, a part of the record. N.C. R. App. P. 9(a)(3)(vii). Examination of the judgment in the instant case unquestionably discloses that the trial judge did not make and enter findings of fact in adjudging that defendant make restitution as a part of the probationary judgment. Whether the court erred by failing to make findings as to defendant's ability to pay is a question of law and is determinative of this assignment of error. We turn to that question.

[3] Section 15A-1343(d) of the General Statutes in pertinent part provides:

> (d) Restitution as a Condition of Probation.— As a condition of probation, a defendant may be required to make restitution or reparation to an aggrieved party or parties who shall be named by the court for the damage or loss caused by the defendant arising out of the offense or offenses committed by the defendant. When restitution or reparation is a condition imposed, the court shall take into consideration the resources of the defendant, his ability to earn, his obligation to support dependents, and such other matters as shall pertain to his ability to make restitution or reparation. The amount must be limited to that supported by the record, and the court may order partial restitution or reparation when it appears that the damage or loss caused by the offense or offenses is greater than that which the defendant is able to pay.

The Court of Appeals, finding error in the restitution order, stated:

> The trial court ordered defendant to pay a total of $919.25 for the medical expenses of the victim Ward. The trial court made no findings of fact or conclusions of law as to defendant's ability to earn, her resources, her obligation to

support dependents or any other matters that might affect her ability to make restitution. By the clear terms of G.S. 15A-1343(d) this was error.

71 N.C. App. at 605, 323 S.E. 2d at 45.

As previously noted, the trial court ordered defendant to pay medical expenses *not paid by medical insurance* in an amount not to exceed $806.25 to Pitt Memorial Hospital and $113.00 to Dr. John Winstead. These payments were to be made under the supervision and direction of defendant's probation officer during the three year probationary period.

Probation or suspension of sentence is not a right guaranteed by either the federal or state constitutions but is a matter of grace conferred by statute. *State v. Hewitt*, 270 N.C. 348, 154 S.E. 2d 476 (1967); N.C. Gen. Stat. § 15A-1341 (1983) *et seq.*

We do not interpret N.C.G.S. § 15A-1343 to require the trial judge to find and enter facts when imposing a judgment of probation. Rather it requires the court to *take into consideration* the resources of the defendant, her ability to earn, her obligation to support dependents, and such other matters as shall pertain to her ability to make restitution or reparation.

This record clearly shows that these matters were considered by Judge Allsbrook in his judgment ordering restitution. He knew defendant's age, her relationship to the victim, that she resided with her mother, that she was indigent for legal purposes, and that the victim's family had insurance of an uncertain amount in scope at the time of the sentencing hearing. The court's action in remitting the original fine and delegating the determination and scheduling of payments in restitution to the probation officer evidenced the trial judge's full recognition of the matters to be considered pursuant to N.C.G.S. § 15A-1343(d).

Our interpretation of N.C.G.S. § 15A-1343(d) is buttressed by other provisions of Article 82 of the General Statutes. In this regard we note that N.C.G.S. § 15A-1341(c) provides:

(c) Election to Serve Sentence or Be Tried on Charges.— Any person placed on probation may at any time during the probationary period elect to serve his suspended sentence of imprisonment in lieu of the remainder of his probation. Any

person placed on probation upon deferral of prosecution may at any time during the probationary period elect to be tried upon the charges deferred in lieu of remaining on probation.

Even more persuasive are the provisions of N.C.G.S. § 15A-1345(e) to wit:

(e) Revocation Hearing.—Before revoking or extending probation, the court must, unless the probationer waives the hearing, hold a hearing to determine whether to revoke or extend probation and must make findings to support the decision and a summary record of the proceedings. The State must give the probationer notice of the hearing and its purpose, including a statement of the violations alleged. The notice, unless waived by the probationer, must be given at least 24 hours before the hearing. At the hearing, evidence against the probationer must be disclosed to him, and the probationer may appear and speak in his own behalf, may present relevant information, and may confront and cross-examine adverse witnesses unless the court finds good cause for not allowing confrontation. The probationer is entitled to be represented by counsel at the hearing and, if indigent, to have counsel appointed. Formal rules of evidence do not apply at the hearing, but the record or recollection of evidence or testimony introduced at the preliminary hearing on probation violation are inadmissible as evidence at the revocation hearing. When the violation alleged is the nonpayment of fine or costs, the issues and procedures at the hearing include those specified in G.S. 15A-1364 for response to nonpayment of fine.

Section 15A-1345 of the North Carolina General Statutes guarantees notice, bail, a preliminary hearing and a revocation hearing with counsel present. At the revocation hearing, the trial judge must make findings to support his decision on whether to revoke or extend probation. He must also make a summary record of the proceedings. Thus, it appears that a defendant is given the election between imprisonment and probation in the first instance; and once he chooses probation, the statute guarantees full due process before there can be a revocation of probation and a resulting prison sentence.

For the reasons stated, the decision of the Court of Appeals is affirmed in part and reversed in part. The judgment entered in Pitt County Superior Court on 28 July 1983 remains in full force and effect.

Affirmed in part; reversed in part.