STATE OF NORTH CAROLINA v. GILMER EUGENE KINNEY

No. 8818SC557

(Filed 7 February 1989)

**1. Assault and Battery § 15.7— assault with a deadly weapon—instruction on self-defense not required**

The trial court did not err in a prosecution for assault with a deadly weapon with intent to kill inflicting serious injury by refusing to give a self-defense instruction where there was no evidence that defendant reasonably believed it necessary to kill his brother to protect himself from death or great bodily harm. Evidence that his brother had physically abused defendant in the past and had threatened to beat defendant approximately thirty minutes

before the shooting was not sufficient to show that at the time of the shooting defendant was in actual or apparent danger of death or great bodily harm, there was no evidence that at the time of the shooting the brother tried to strike defendant or attack him physically, defendant testified that he did not intend to shoot his brother and denied pointing a gun at him, defendant's evidence showed that the gun discharged when the brother tried to take the shotgun from defendant, and testimony from a police investigator that after the shooting, defendant remarked that he shot his brother before his brother shot him did not in and of itself indicate a reasonable belief on defendant's part that his life was in jeopardy or that great bodily harm was imminent considering the lack of any evidence to show that the brother threatened defendant with a gun or dangerous weapon.

**2. Criminal Law § 128.1— assault—defendant nervous on day of trial—mistrial denied**

The trial court did not err in a prosecution for assault with a deadly weapon with intent to kill inflicting serious injury by denying defendant's motion for a mistrial, which was based on his physical and mental condition on the second day of trial. According to a physician's testimony, defendant was able to proceed and his nervousness and anxiety were considered normal for a person facing trial. Moreover, defendant testified at trial and there was nothing in his testimony which would support his argument that his allegedly impaired condition prevented him from effectively testifying in his own defense.

**3. Criminal Law § 138.34— assault—mitigating factors—physical and mental condition**

The trial court did not err in a prosecution for assault with a deadly weapon with intent to kill inflicting serious injury by failing to find as a mitigating factor that defendant was suffering from physical and mental conditions insufficient to constitute a defense but significantly diminishing his culpability for the offense where, although there was testimony that defendant had been in mental hospitals on numerous occasions, it was never made clear that defendant had been diagnosed as suffering from any specific condition, there was no medical evidence regarding the state of defendant's mental and physical condition other than testimony as to his condition during the trial, and, assuming that there was sufficient evidence to show that he was suffering from a particular condition, there was no evidence that the condition was such as to reduce his culpability.

**4. Assault and Battery § 15.2— assault with a deadly weapon—instruction on defense of accident—no plain error**

There was no plain error in the court's instruction on the defense of accident in a prosecution for assault with a deadly weapon inflicting serious injury where the court instructed the jury that pointing a gun at a person is not lawful conduct, but the only issue before the jury was whether the shooting was accidental or intentional and there could hardly have been any question as to the gun having been pointed at the victim. The verdict would have been the same without the surplusage in the instruction that pointing a gun at someone is not lawful conduct.

APPEAL by defendant from *Rousseau (Julius A., Jr.), Judge.* Judgment entered 16 December 1987 in Superior Court, GUILFORD County. Heard in the Court of Appeals 10 January 1989.

Defendant was properly indicted on 2 March 1987 for assault with a deadly weapon with intent to kill inflicting serious injury in violation of G.S. 14-32(a). After a jury trial, defendant was convicted as charged and sentenced to an active term of twenty years. Defendant appeals.

*Attorney General Lacy H. Thornburg, by Assistant Attorney General Mabel Y. Bullock, for the State.*

*Appellate Defender Malcolm Ray Hunter, Jr., by Assistant Appellate Defender M. Patricia DeVine, for defendant.*

LEWIS, Judge.

Defendant was charged and convicted of assaulting his brother Talmadge Kinney (Tim) with a shotgun with the intention of killing him and inflicting serious injury. The events surrounding the shooting are disputed.

The State's evidence generally tended to show the following. Around 11:00 a.m. on 11 October 1986 Tim was at his mother's house in Greensboro where defendant also resided. He and Timothy Chilton (Chilton) were attempting to repair Tim's dump truck which defendant had wrecked earlier in the week. Defendant arrived at the scene accompanied by Frank McDaniel (McDaniel) and bringing with him a just-purchased hood latch for the truck. Defendant and McDaniel then proceeded to attach the latch, which did not fit, using an eight to ten pound sledgehammer. Tim stopped the two men, and smelling alcohol on their breath, told McDaniel to go home and defendant to go in the house and sleep it off. Defendant subsequently went inside. Approximately thirty minutes later Tim went into the house to get some paper towels. At the time he was carrying a can of WD-40 lubricant in his hand and a pocketknife on his pouch saddle. When Tim entered the kitchen he was confronted by defendant sitting in a chair next to the sink and holding a shotgun. Tim testified that defendant then stood and said " '[y]ou're a dead son of a bitch.' " Tim hit the gun and it fired. The discharge hit Tim and knocked him up against the wall and to the floor. Defendant then placed the gun at Tim's

neck and stated " 'I got to kill you now. I don't need a witness, and they don't convict crazy people.' " The two struggled for the gun and Tim managed to make his way outside where he yelled for help. Chilton ran up, helped Tim to the car and took him to the hospital. Defendant followed Tim outside and unsuccessfully tried to pull Tim out of the car.

Rebuttal evidence by the State tended to show that after the shooting and while at the hospital defendant told a police investigator, " 'Well, I shot him before he shot me. He came there last night, raising hell. I told him I was tired of his raising hell at my house. I shot him before he would have shot me. I ain't sorry, 'cause he would have shot me.' "

Defendant's testimony tended to show that on the morning of the shooting defendant was attempting to assist Tim repair his truck. Defendant had not consumed any alcohol. Tim became verbally abusive to defendant and threatened to beat him if he did not go in the house. Defendant went in the house and lay down on the couch for several minutes. Shortly thereafter defendant went to the kitchen to take two Valium tablets and looking through the kitchen window saw Tim throw a wrench across the yard and hurriedly start toward the house. Defendant testified that Tim was carrying what appeared to be a pull bar in his hand. Fearing his brother was coming to beat him, defendant grabbed the loaded shotgun he kept next to the couch. When Tim came into the kitchen defendant backed away from Tim when Tim reached to get the gun and the gun discharged. Defendant testified he never pointed the gun at his brother, never intended to shoot him and does not remember pulling the trigger. Immediately after the shooting defendant helped his brother to the car so that he could be taken to the hospital.

Charles Jayne (Jayne) testified for the defense that on the morning of the shooting Tim had threatened to beat defendant if defendant did not go inside. After defendant went inside Tim continued to berate defendant stating, *inter alia,* "I should kill that son of a bitch." Shortly thereafter Tim threw down the wrench he had in his hand and quickly walked inside. Jayne further stated that he did not witness the actual shooting but heard Tim say "God damn 'Jitterbug' [defendant]" just before he heard the gunshot. After the shooting Jayne saw both brothers come out of the

house with Tim carrying the shotgun. Defendant took the shotgun from Tim, helped him into the car, and walked back in the house.

Defendant brings forward four assignments of error. First, he contends that the trial court erred in failing to submit a self-defense instruction to the jury. Second, defendant assigns as error the court's refusal to grant a mistrial based on defendant's alleged agitated physical and mental condition on the second day of trial. Third, defendant contends that the court erroneously failed to find G.S. 15A-1340.4(2)(d) as a mitigating factor in sentencing. Fourth, defendant asserts as plain error the trial court's statement to the jury that pointing a gun at a person was not lawful conduct. We have reviewed the record in this case and find no prejudicial error.

[1]  Defendant contends that the trial court erred in refusing to give a self-defense instruction because evidence was presented from which a jury could find that he was acting in self-defense when the gun fired. A defendant may use deadly force to repel a felonious assault only if it reasonably appears necessary to protect himself from death or great bodily harm. *State v. Hunter*, 315 N.C. 371, 338 S.E. 2d 99 (1986). However, a defendant may not use deadly force to protect himself from mere bodily harm or offensive physical contact and use of deadly force to prevent harm other than death or great bodily harm is excessive as a matter of law. *Id.* An assault with intent to kill is justified under self-defense if a defendant is in actual or apparent danger of death or great bodily harm. *State v. Dial*, 38 N.C. App. 529, 248 S.E. 2d 366 (1978).

A self-defense instruction is required if any evidence is presented from which it can be determined that it was necessary or reasonably appeared necessary for a defendant to kill the victim to protect himself from death or great bodily harm. *State v. Bush*, 307 N.C. 152, 297 S.E. 2d 563 (1982). It is for the trial court to determine in the first instance whether as a matter of law there is evidence to require a self-defense instruction. *Id.* The court must consider the evidence in the light most favorable to the defendant and where there is evidence of self-defense, the court must give the instruction even if there are discrepancies or contradictions in the evidence. *State v. Blackmon*, 38 N.C. App. 620, 248 S.E. 2d

456 (1978), *disc. rev. denied*, 296 N.C. 412, 251 S.E. 2d 471 (1979); *State v. Dooley*, 285 N.C. 158, 203 S.E. 2d 815 (1974).

To merit a self-defense instruction, two questions must be answered in the affirmative: "(1) Is there evidence that the defendant in fact formed a belief that it was necessary to *kill* his adversary in order to protect himself from death or great bodily harm, and (2) if so, was the belief reasonable?" *Bush*, 307 N.C. at 160, 297 S.E. 2d at 569. (Emphasis added.) If the answer to either question is "no" then a self-defense instruction is not required. *Id.*

The facts and circumstances surrounding the assault and not a defendant's stated belief are the determinative factors as to whether a defendant acted as an aggressor or in his own defense. *State v. Randolph*, 228 N.C. 228, 45 S.E. 2d 132 (1947). Here, the facts and circumstances do not warrant a self-defense instruction in that there is no evidence that defendant reasonably believed it necessary to kill his brother to protect himself from death or great bodily harm. Defendant's evidence that Tim had physically abused defendant in the past and had threatened to beat defendant approximately thirty minutes before the shooting is not sufficient to show that at the time of the shooting defendant was in actual or apparent danger of death or great bodily harm. *See Hunter, supra.* There is no evidence that at the time of the shooting Tim tried to strike defendant or attack him physically. Defendant testified that he did not intend to shoot Tim and denied pointing a gun at him. Also, defendant's evidence showed that the gun discharged when Tim tried to take the shotgun from defendant.

To support his argument that he acted in self-defense defendant points to the testimony of a police investigator that after the shooting defendant remarked that he shot his brother before his brother shot him. We do not believe that this testimony in and of itself indicates a reasonable belief on defendant's part that his life was in jeopardy or that great bodily harm was imminent considering the lack of any evidence to show that Tim threatened defendant with a gun or dangerous weapon at the time of the shooting. Defendant himself testified at trial that Tim did not have a gun either before or at the time of the shooting. Based on the foregoing, the trial court did not err in refusing to submit a self-defense instruction to the jury.

[2]   Defendant next assigns as error the court's refusal to grant a mistrial based on defendant's physical and mental condition on the second day of the trial which defendant contends prevented him from effectively defending himself. The record reveals that on the evening of 11 March 1987, the first day of trial, defendant was taken to the emergency room of the local hospital and examined for unspecified complaints. Medical tests were taken and the results were normal. The next morning before court convened the judge was informed that defendant was perspiring profusely and experiencing difficulty in breathing. Dr. Timothy Davis, present in court to testify for the State, briefly examined defendant and testified in the following manner regarding defendant's ability to proceed:

> DR. DAVIS: From my perspective as a general surgeon, his heart rate was faster than normal. He was perspiring, and stated that he felt quite nervous and anxious. But I could see or find nothing in my brief examination that was totally out of the ordinary. . . .
>
> THE COURT: Well, would you have any recommendation as to whether you think he's able to proceed to trial or needs some further examination?
>
> DR. DAVIS: It would seem to me that he would be able to proceed. He's very nervous and anxious, which in my opinion, is not out of the ordinary for this morning.
>
> THE COURT: In other words, you think about anybody that's got a case in court's a little nervous and anxious?
>
> DR. DAVIS: Absolutely. . . .
>
> MR. RAY: Dr. Davis, keeping in mind that Mr. Kinney will be a key witness . . . do you feel he would have the ability . . . to effectively defend himself by testifying under oath as to the facts and circumstances of this case?
>
> DR. DAVIS: Probably not, in his state this morning. . . .
>
> MR. GREESON: That could happen from now till the day he died, getting nervous and not being able to take the stand, couldn't it?
>
> DR. DAVIS: I think that's a very good possibility.

Defendant's subsequent motion for a mistrial was denied by the court.

G.S. 15A-1061 provides:

> Upon motion of a defendant or with his concurrence the judge may declare a mistrial at any time during the trial. The judge must declare a mistrial . . . if there occurs during the trial an error or legal defect in the proceedings, or conduct inside or outside the courtroom, resulting in substantial and irreparable prejudice to the defendant's case.

"Mistrial is a drastic remedy, warranted only for such serious improprieties as would make it impossible to attain a fair and impartial trial." *State v. Stocks*, 319 N.C. 437, 441, 355 S.E. 2d 492, 494 (1987). Whether to grant a mistrial is within the trial judge's discretion and this court will not reverse that decision unless the defendant demonstrates an abuse of the trial court's discretion. *Id.; State v. King*, 311 N.C. 603, 320 S.E. 2d (1984). Defendant here has failed to show that the trial court's refusal to grant a mistrial was an abuse of discretion or that such refusal irrevocably or substantially prejudiced defendant's case. According to testimony, defendant was able to proceed and his nervousness and anxiety were considered normal for a person facing trial. Defendant testified at trial and there is nothing in his testimony which would support his argument that his alleged impaired condition prevented him from effectively testifying in his own defense.

[3] Defendant next assigns as error the trial court's failure to find as mitigating factors that defendant was suffering from physical and mental conditions insufficient to constitute a defense but significantly diminishing his culpability for the offense. Finding that a mitigating factor exists is within the trial judge's discretion and will not be disturbed on appeal absent a showing that the court's ruling was so arbitrary that it could not be the result of a reasoned decision. *State v. Barts*, 321 N.C. 170, 362 S.E. 2d 235 (1987). Although testimony was received that defendant had been in mental hospitals on numerous occasions in the past, it was never made clear during the guilt or sentencing phases of the trial that defendant had been diagnosed as suffering from any specific mental or physical condition. There was no medical evidence regarding the state of defendant's mental and physical health other than Dr. Davis' testimony as to defendant's

condition during the trial. Additionally, assuming *arguendo* that there was sufficient evidence to show that defendant was suffering from a particular physical or mental condition, there is no evidence that the condition was such as to reduce his culpability in assaulting his brother. Thus, we find that the judge did not abuse his discretion.

[4] Defendant's fourth assignment of error is to the following portion of the trial judge's instruction to the jury: "An injury is accidental if it is unintentional, occurs during the course of lawful conduct, and does not involve culpable negligence. Of course, pointing a gun at a person is not lawful conduct." Defendant contends that the last statement by the court allowed the jury to conclude that the judge had formed an opinion as to what the State had proven and that such a remark "virtually undercut the defense of accident." We do not agree.

Initially, we note that defendant failed to object to the trial judge's instruction although given the opportunity. App. R. 10(b)(2) prohibits a party from assigning as error any portion of the jury instruction not objected to before the jury returned and App. R. 10(a) limits this court's review to exceptions set forth in the record and made the basis of an assignment of error. Thus, under our appellate rules this assignment of error is not properly before us. However, in *State v. Odom*, 307 N.C. 655, 300 S.E. 2d 375 (1983), our Supreme Court adopted the "plain error" exception utilized in the Federal courts. Under this "plain error" exception, our court may review an alleged error in a court's instruction if the record indicates that such an error is a " 'fundamental error, something so basic, so prejudicial, so lacking in its elements that justice cannot have been done.' " *Id.* at 660, 300 S.E. 2d at 378, *quoting United States v. McCaskill*, 676 F. 2d 995, 1002 (4th Cir. 1982). This rule is always applied cautiously and it is rare when an improper instruction merits reversal of a conviction when no objection was made at trial. *Id.*

In making a determination as to whether "plain error" exists this court must examine the whole record and decide whether the error had a probable effect on the jury's verdict of guilt. *Id.* This court must be convinced that the jury would decide differently absent the alleged error. *State v. Joplin*, 318 N.C. 126, 347 S.E. 2d 421 (1986). In the case before us, the State provided sufficient

evidence from which the jury could conclude that defendant intentionally shot his brother. The defendant was not charged with pointing a gun but rather with assault with a deadly weapon with the intent to kill, inflicting serious injury. The injury and the fact it resulted from a shooting is undisputed. The only issue before the jury was whether the shooting was accidental or intentional. There could hardly have been any question as to this gun having been pointed at the victim. The defendant presented evidence that he did not intentionally point the gun at the victim at all. The jury chose not to believe that portion of the evidence. The able and experienced trial judge correctly instructed the jury throughout the charge and in the final mandate. The surplusage in the instruction that pointing a gun at someone is not lawful conduct did not cause, in our opinion, the jury to find the defendant guilty. Without that statement, we believe the verdict would have been the same.

No error.

Judges EAGLES and PARKER concur.