927 F.2d 596
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Harold MAXWELL, III, Petitioner-Appellant,
v.
Talmadge BARNETT, Attorney General of North Carolina,
Respondent-Appellee.
 No. 89-6027.
 United States Court of Appeals, Fourth Circuit.
 Argued Nov. 2, 1990.
Decided Feb. 26, 1991.
As Amended May 6, 1991.
 
 Appeal from the United States District Court for the Eastern District of North Carolina, at Raleigh. Franklin T. Dupree Jr., Senior District Judge. (CA-88-987-HC)
 Grant Scott, Student Counsel, University of North Carolina School of Law, Chapel Hill, N.C., (argued), for appellant; Barry Nakell, University of North Carolina School of Law, Chapel Hill, N.C., on brief.
 Richard Norwood League, Special Deputy Attorney General, Raleigh, N.C. (argued), for appellees; Lacy H. Thornburg, Attorney General, Raleigh, N.C., on brief.
 E.D.N.C.
 AFFIRMED.
 Before ERVIN, Chief Judge, BUTZNER, Senior Circuit Judge, and HADEN, Chief United States District Judge for the Southern District of West Virginia, Sitting by Designation.
 PER CURIAM:
 
 
 1
 Harold Maxwell, III appeals the self-initiated revocation of his parole. He presents three issues on appeal: first, whether he was unconstitutionally denied a parole revocation hearing; second, whether he had a right to appointed counsel at the revocation proceeding; and third, whether he was entitled to a competency hearing at the time of the revocation. We affirm the district court's holding that Maxwell was not entitled to a revocation hearing, counsel, or a competency hearing.
 
 I.
 
 2
 Maxwell entered a guilty plea on August 5, 1987, to one count of committing a "crime against nature" in violation of N.C.Gen.Stat. Sec. 14-177. He was sentenced by the Superior Court of Beaufort County, North Carolina to imprisonment for ten years, the maximum term. The court, nevertheless, suspended the sentence and placed Maxwell on supervised probation for four years.
 
 
 3
 The court also ordered Maxwell to pay a $250.00 fine and to reimburse the state $800.00 for the cost of appointed counsel. Moreover, Maxwell's probation was conditioned on his voluntarily submitting to the Tideland Mental Health Center, Washington, North Carolina for treatment.
 
 
 4
 Two months later, on October 12, 1987, Maxwell appeared before the Beaufort County Superior Court asking that his probation be revoked pursuant to N.C.Gen.Stat. Sec. 15A-1341(c). The presiding judge was the same one who had earlier placed him on probation. He was advised of his right to counsel, twice stating he waived it, and said he desired revocation. Maxwell suggested that he sought the revocation because of a "financial emergency."
 
 
 5
 The court then entered its order revoking probation and imposing the ten year active sentence. On August 30, 1988, Maxwell filed a motion for appropriate relief in state court. When seeking relief, Maxwell suggested that his emergency was related to his desire to have some place to lie down during the day as a consequence of his being homeless.
 
 
 6
 The rationale for revoking the probation appears to be longstanding. Maxwell similarly revoked his 1984 probation for possession of marijuana. He requested prison, at that time, because he did not want to live in a shelter for the homeless and had no place else to go.[1]
 
 
 7
 After the denial of the motion by state court and the denial of certiorari by the North Carolina Court of Appeals, Maxwell filed this writ of habeas corpus pursuant to 28 U.S.C. Sec. 2254 in district court. After reviewing Maxwell's psychiatric history as well as claims that he was under psychological stress and adversely affected by medication at the time of the revocation, the court denied his petition.
 
 II.
 A.
 
 8
 The question of whether Maxwell was entitled to a parole revocation hearing turns on the peculiar circumstances of his revocation. Generally, probation may be revoked only upon a finding of a material violation of a valid condition of the probation. See, e.g., State v. Seagraves, 266 N.C. 112, 113, 145 S.E.2d 327, 329 (1965). North Carolina law, however, also provides for revocation under the following circumstances:
 
 
 9
 Any person placed on probation may at any time during the probationary period elect to serve his suspended sentence of imprisonment in lieu of the remainder of his probation.
 
 
 10
 N.C.Gen.Stat. Sec. 1341(c). The cases generally relied upon by Maxwell concern themselves with revocation initiated by the state, not the parolee. Thus, they do not avail Maxwell on this issue.
 
 
 11
 While Gagnon v. Scarpelli held that due process requires a hearing before probation may be revoked, it explicitly applies that requirement only to revocations based on alleged parole violations. 411 U.S. 778, 782 (1973). Gagnon held that parolees are entitled to revocation hearings under the conditions set forth in Morrisey v. Brewer, 408 U.S. 471 (1972).
 
 
 12
 In Morrisey, the Court held that due process requires two hearings before parole may be revoked pursuant to the violation of a condition of parole. 408 U.S. at 485-88. A preliminary hearing is required
 
 
 13
 to determine whether there is probable cause or reasonable ground to believe that the arrested parolee has committed acts that would constitute a violation of parole.
 
 
 14
 Id. at 485. Such a hearing is patently inapposite in Maxwell's case. Furthermore, the purpose of the final revocation hearing is to
 
 
 15
 lead to a final evaluation of any contested relevant facts and consideration of whether the facts as determined warrant revocation.
 
 
 16
 Id. at 488. Clearly, neither the intent of Morrisey nor the purpose of the revocation hearing contemplates a self-initiated revocation. Therefore, Morrisey and Gagnon are inapplicable.
 
 
 17
 Additionally, Maxwell premises his claim for a hearing on State v. Hunter, 315 N.C. 371, 338 S.E.2d 99 (1986). In dicta, the court noted pursuant to N.C.Gen.Stat. Sec. 15A-1345(e) (a statutory description of the revocation hearing) that when
 
 
 18
 a defendant is given the election between imprisonment and probation ... once he chooses probation, the statute guarantees full due process before there can be a revocation of probation and a resulting prison sentence.
 
 
 19
 338 S.E.2d at 104. The court, however, did not allude to what "full" due process requires. Moreover, the court was silent on the question of whether the revocation hearing, with full due process, is required for a defendant who having received probation, begins probation, and then elects to serve his sentence. There is no basis for Maxwell's claim for a revocation hearing, either on state or federal constitutional grounds.
 
 B.
 
 20
 Maxwell's three-fold contention that he was constitutionally entitled to counsel, that the exercise of this "right" was constrained by his financial emergency, and did not waive counsel similarly fails.
 
 1.
 
 21
 Gagnon requires the provision of counsel for revocation in two instances: first, where the alleged parole violations are contested; and, second, where the violations are not contested, but where the reasons that justify or mitigate the violation are complex or otherwise difficult to develop and present. 411 U.S. at 790.
 
 
 22
 Gagnon is inapplicable because Maxwell's revocation was not state initiated. Even if we assume the applicability of Gagnon, Maxwell's case resembles neither the first nor second instance. Maxwell appeared at the revocation proceeding sua sponte. There was no assertion by the state of a parole violation. Thus Maxwell's situation, only by the most rough analogy, is closest to Gagnon's second instance where counsel is required to assist in presenting complex issues. No such assistance was required here, where Maxwell appeared of his own volition and stated that he would like to serve his sentence. Maxwell was generally aware of the consequences of parole revocation as it was not his first self-initiated revocation. Moreover there is nothing in the record to suggest that he was unaware of the particular consequences of the second revocation. As a matter of law, Maxwell may take exception to the court effectuating his parole revocation request; factually, he cannot now argue, however, that counsel was needed to present such a simple request. Under Gagnon, Maxwell has neither the right nor the requisite need for counsel.
 
 2.
 
 23
 For a waiver of counsel to be effective it must be knowing and intelligent. Faretta v. California, 422 U.S. 806, 835 (1975). One who chooses to represent himself
 
 
 24
 should be made aware of the dangers and disadvantage of self-representation, so that the record will establish that "he knows what he is doing and his choice is made with his eyes open."
 
 
 25
 Id., quoting Adams v. United States ex rel. McCann, 317 U.S. 269, 279 (1942).
 
 
 26
 Maxwell was aware of the function of counsel as he relied on an attorney only two months before. He also used an attorney for the marijuana possession conviction. Furthermore, the uncomplicated nature of his revocation request meant that there were few, if any, of "the dangers and disadvantage of self-representation."
 
 
 27
 Nevertheless, the state court judge asked Maxwell did he understand that he was "entitled to be represented by a lawyer." When Maxwell responded that he was unaware that counsel could be made available, the judge informed him of that. Maxwell's unprompted response to this information was, "All right. I don't have to be [represented by an attorney]? I can just go ahead and sign a waiver?" The fact that Maxwell mentioned the possibility of a waiver demonstrates that he was at least generally aware of its purpose and the disadvantages of self-representation. Before allowing Maxwell to sign a waiver, however, the judge stated:
 
 
 28
 Well, let me tell you first of all that you've got three rights about a lawyer.
 
 
 29
 One, you can hire any lawyer you want to represent you.
 
 
 30
 Two, you can appear for yourself without a lawyer being involved; and
 
 
 31
 Three, you can ask me to appoint a lawyer for you which I'll do if I'm satisfied you don't have the money to hire one, understanding that under certain circumstances I may require you to reimburse the State for what they pay your lawyer.
 
 Do you understand those three rights?[2]
 
 32
 Only after Maxwell said that he understood those options and stated that he wanted to represent himself did the judge permit the waiver. Where a parolee in a self-initiated revocation proceeding specifically requests a waiver sua sponte, was aware of the role of counsel, was informed of the availability of a court-appointed attorney by the judge, and again requests a waiver, we hold such a waiver is knowing and intelligent.
 
 3.
 
 33
 Finally, Maxwell claims that the exercising of his alleged right to counsel may have been constrained or chilled by his "financial emergency." The record, however, is a slender premise for this claim. When Maxwell was asked by the judge whether he desired to come off of probation and serve his active sentence, he stated, "Yes sir. It's a financial emergency." This response, however, came after the waiver was requested, granted, and signed by Maxwell. Furthermore, Maxwell made no complaint about the payment schedule for reimbursement for appointed counsel. While Maxwell's response alludes to why he may have chosen revocation, there is nothing in the record to show his reasons for the waiver. Therefore, we conclude that his alleged right to counsel was not chilled.
 
 C.
 
 34
 Maxwell contends that the state court judge should have made substantive inquiries about his mental health and ordered a mental competency hearing. Maxwell bases his claim on his schizophrenia, alleged side effects of his medicine, psychological stress, the unusual nature of self-initiated revocation, and the lack of a state court competency hearing.
 
 
 35
 Given the record and the Shaw v. Martin, 733 F.2d 304, 314 (4th Cir.1984), standard for incompetence, the trial judge properly denied the hearing. In Shaw, this court held that the standard for competence is the same whether the defendant is standing trial or pleading guilty. 733 F.2d at 314. Under the Shaw standard, the defendant must demonstrate that
 
 
 36
 his mental faculties were so impaired ... when he pleaded that he was incapable of full understanding and appreciation of the charges against him, of comprehending his constitutional rights and of realizing the consequences of his plea.
 
 
 37
 United States v. Truglio, 493 F.2d 574, 578 (4th Cir.1974). We need not fashion a new standard for determining competency to revoke parole. Given that Maxwell was found to be competent two months before the revocation at the guilty plea proceedings and had sought parole revocation before, he must have been aware of his constitutional rights and the consequences of revocation. Moreover, the state court judge could best determine whether Maxwell's unusual request evinced mere "stress" or Shaw level incompetence. The district court did not err in holding that the state court did not abuse its discretion by not granting a competency hearing.
 
 III.
 
 38
 Accordingly, Maxwell was not entitled to a parole revocation hearing, counsel, or a competency hearing. With respect to each of the issues on appeal, the district court's decision is affirmed.
 
 
 39
 AFFIRMED.
 
 
 
 [1]
 Maxwell stated at the guilty plea proceedings for marijuana possession: "I didn't have anywhere to live at the time. I didn't want to live in the Shelter for the Homeless so I decided I would try prison but it was not a good experience."
 
 
 [2]
 Under Gagnon, Maxwell did not have a "right" to an attorney. We, therefore, do not concur with the state court's description of the three legal options for securing or not securing counsel as "rights."