STATE v. WILLS

[110 N.C. App. 206 (1993)]

No. 916SC1019

(Filed 18 May 1993)

1. **Assault and Battery § 100 (NCI4th)— self-defense—insufficiency of evidence**

    In a prosecution of defendant for assault with a deadly weapon with intent to kill inflicting serious injury, the trial court did not err in refusing to instruct the jury on self-defense where the evidence tended to show that the unarmed victim, who was six feet from defendant, walked toward defendant immediately prior to the shooting; defendant admitted that he had never seen the victim with a weapon of any kind and that he could have avoided the scene of the crime by continuing to walk along the highway; defendant shot the victim at least five or six times even after he had fallen to the ground after the first two shots; and evidence that the victim had punched defendant two days earlier and had threatened to assault defendant earlier during the day of the shooting was not sufficient to show that at the time of the shooting defendant was in actual or apparent danger of death or great bodily harm.

    **Am Jur 2d, Assault and Battery §§ 100, 195.**

    **Standard for determination of reasonableness of criminal defendant's belief, for purposes of self-defense claim, that physical force is necessary—modern cases. 73 ALR4th 993.**

2. **Evidence and Witnesses § 2917 (NCI4th)— prior shooting of defendant—evidence offered by defendant—State's cross-examination proper**

There was no merit to defendant's contention that the State's cross-examination of him and his witness regarding the events surrounding defendant's gunshot wound from two weeks earlier was an attempt to impeach both defendant and his witness as persons of bad, violent character in violation of N.C.R. Evid. 608(b), since, by introducing evidence of his own gunshot wound in his attempt to establish self-defense, defendant opened the door for the State's cross-examination concerning the events immediately surrounding defendant's gunshot wound, and the State's inquiry was a proper attempt to explain, explore, or rebut defendant's proffered evidence.

**Am Jur 2d, Witnesses §§ 808, 835, 838, 865.**

**Cross-examination of character witness for accused with reference to particular acts or crimes—modern cases. 13 ALR4th 796.**

3. **Criminal Law § 756 (NCI4th)— reasonable doubt—instructions proper**

The trial court's instructions on reasonable doubt that it "means exactly what it says" and that reasonable doubt was "one based on reason and common sense reasonably arising out of some or all of the evidence that has been presented or the lack of or insufficiency of that evidence as the case may be" was proper, even though the better practice is to follow the pattern jury instructions on reasonable doubt.

**Am Jur 2d, Evidence § 1171; Trial §§ 1168-1175, 1371.**

**Construction of statutes or rules making mandatory the use of pattern or uniform approved jury instructions. 49 ALR3d 128.**

4. **Criminal Law § 1242 (NCI4th)— strong provocation—mitigating factor not established by uncontradicted evidence**

In a prosecution of defendant for assault with a deadly weapon with intent to kill inflicting serious injury, the trial court did not err in failing to find as a statutory mitigating factor that defendant acted under strong provocation, since there was a lapse of time between the previous encounter

STATE v. WILLS

[110 N.C. App. 206 (1993)]

between defendant and the victim and this shooting, there was no weapon on the victim's person at the time of the shooting, and uncontradicted evidence of strong provocation therefore did not exist. N.C.G.S. § 15A-1340.4(a)(2)i.

**Am Jur 2d, Assault and Battery §§ 61, 77, 96.**

**Withdrawal, after provocation of conflict, as reviving right of self-defense. 55 ALR3d 1000.**

Appeal by defendant from judgment signed 9 May 1991 by Judge Howard R. Greeson, Jr., in Halifax County Superior Court. Heard in the Court of Appeals 12 January 1993.

On 9 May 1991, defendant was sentenced to the maximum term of twenty years imprisonment after a jury found him guilty of assault with a deadly weapon with intent to kill inflicting serious injury. G.S. 14-32(a). Defendant admitted shooting the victim, Stephen Whitaker, but asserted the defense of self-defense. Defendant appeals.

The State's evidence tended to show the following: On 25 September 1990 at approximately 5:00 p.m., Mr. Whitaker and his wife, Yvette Whitaker, were arguing. Mrs. Whitaker drove away in her car. Mr. Whitaker followed in a separate car and eventually drove in front of Mrs. Whitaker's car, causing her to stop. Mr. Whitaker walked over to her car and they continued their argument. Defendant and Dalerick "Cakey" Pittman approached the Whitakers on foot. Defendant then pulled a H & R .22 caliber nine shot revolver from his pants. Mr. Whitaker did not have a weapon. Mrs. Whitaker saw defendant and stated, "George, no." Standing approximately six feet from Mr. Whitaker, defendant shot Mr. Whitaker several times and then threw the revolver into some bushes as he ran away.

On 27 September 1990, defendant was taken into custody. Defendant gave a statement in which he stated that he (defendant) had been shot in the neck during an argument with another man approximately two weeks before he shot Mr. Whitaker. Additionally, defendant's statement read as follows:

I have had about four encounters with Yvette's husband, Steve Whitaker, recently. The latest one was Tuesday, September the 25th, 1990 about 2 p.m. Steve [Mr. Whitaker] passed me on [sic] a car as I walked up 301 Highway. He [Mr. Whitaker] yelled, "I'm going to beat your ass if I see you up the street."

The Sunday before this Steve [Mr. Whitaker] had hit me several times with his fist. I didn't try to fight. Dalerick Pittman who was with me then got him off of me.

Later Tuesday afternoon, September the 25th, 1990 I saw Steve [Mr. Whitaker] chasing Yvette [Mrs. Whitaker] on [sic] his car. He slid his car in front of Yvette's so she would have to stop. He got out of his car and walked up to Yvette's car window. When they passed me it was at Bell and McDaniel Streets. By the time he could stop her they were one block west of me at Bell and Railroad Street. Dalerick "Cakey" Pittman was walking with me. We had just bought some food at SKATS Restaurant. Cakey and I ran up the street toward Steve [Mr. Whitaker]. I handed Cakey a bag with my food in it. I then pulled out a .22 caliber nine shot pistol from my pants. I walked up to Steve Whitaker and asked him why had he done this to me. He said, "Because I will do what I want to do." I raised the pistol and fired at least nine times at Steve Whitaker. I knew I hit him because he fell back against the car and then to the ground.

Defendant's evidence tended to show the following: Mr. Pittman testified *inter alia* that a "few days before" the 25 September 1990 shooting, a fight between the two men started when Mr. Whitaker told defendant that he (defendant) had been warned about "messing" with his (Mr. Whitaker's) wife and that he (Mr. Whitaker) was going to "kick [defendant's] tail." At trial, defendant testified that around noon on the day of the offense charged (25 September 1990), Mr. Whitaker drove by defendant and threatened to beat him (defendant) if he was seen on the street. Defendant testified that later that afternoon after he (defendant) pulled the revolver from his pants Mr. Whitaker stated, " 'I see the gun and you better use it or else.' " Defendant testified that Mr. Whitaker stated that he fought defendant previously because he (Mr. Whitaker) wanted to and because he (Mr. Whitaker) was "grown." Defendant testified that he only intended to "scare" Mr. Whitaker with the revolver "so he [Mr. Whitaker] would leave" but that he (defendant) "just panicked because I was afraid of what he would do to me" and began shooting. Defendant testified that he was afraid of Mr. Whitaker because Mr. Whitaker was bigger than he and because Mr. Whitaker had already beaten him once before. Defendant further testified that he carried the revolver "for protection" because

he did not think that he could defend himself considering his physical condition, having been shot by another man two weeks earlier.

*Attorney General Lacy H. Thornburg, by Assistant Attorney General Melissa L. Trippe, for the State.*

*Hux, Livermon & Armstrong, by James S. Livermon, Jr., for defendant-appellant.*

EAGLES, Judge.

Defendant brings forward six assignments of error. After a careful review of the record, transcripts, and briefs, we find no error. Defendant's assignments of error, Nos. 1, 2, 3, 5, 8, 11, and 12, are not brought forward and are deemed abandoned. N.C.R. App. P. 28(b)(5).

I.

[1]  First, defendant contends that the trial court erred in refusing to instruct the jury on self-defense. We disagree.

In *State v. Kinney,* 92 N.C. App. 671, 675-76, 375 S.E.2d 692, 695 (1989), this Court stated:

A defendant may use deadly force to repel a felonious assault only if it reasonably appears necessary to protect himself from death or great bodily harm. *State v. Hunter,* 315 N.C. 371, 338 S.E.2d 99 (1986). However, a defendant may not use deadly force to protect himself from mere bodily harm or offensive physical contact and use of deadly force to prevent harm other than death or great bodily harm is excessive as a matter of law. *Id.* An assault with intent to kill is justified under self-defense if a defendant is in actual or apparent danger of death or great bodily harm. *State v. Dial,* 38 N.C. App. 529, 248 S.E.2d 366 (1978).

A self-defense instruction is required if any evidence is presented from which it can be determined that it was necessary or reasonably appeared necessary for a defendant to kill the victim to protect himself from death or great bodily harm. *State v. Bush,* 307 N.C. 152, 297 S.E.2d 563 (1982). It is for the trial court to determine in the first instance whether as a matter of law there is evidence to require a self-defense instruction. *Id.* The court must consider the evidence in the light most favorable to the defendant and where there is

STATE v. WILLS

[110 N.C. App. 206 (1993)]

evidence of self-defense, the court must give the instruction even if there are discrepancies or contradictions in the evidence. *State v. Blackmon*, 38 N.C. App. 620, 248 S.E.2d 456 (1978), *disc. rev. denied*, 296 N.C. 412, 251 S.E.2d 471 (1979); *State v. Dooley*, 285 N.C. 158, 203 S.E.2d 815 (1974).

To merit a self-defense instruction, two questions must be answered in the affirmative: "(1) Is there evidence that the defendant in fact formed a belief that it was necessary to *kill* his adversary in order to protect himself from death or great bodily harm, and (2) if so, was the belief reasonable?" *Bush*, 307 N.C. at 160, 297 S.E.2d at 569. (Emphasis added.) If the answer to either question is "no" then a self-defense instruction is not required. *Id.*

The facts and circumstances surrounding the assault and not a defendant's stated belief are the determinative factors as to whether a defendant acted as an aggressor or in his own defense. *State v. Randolph*, 228 N.C. 228, 45 S.E.2d 132 (1947).

Here, the facts and circumstances do not warrant a self-defense instruction because there is no evidence "from which it can be determined that it was necessary or reasonably appeared necessary for [this] defendant to kill the victim [Mr. Whitaker] to protect himself from death or great bodily harm." *Kinney*, 92 N.C. App. at 675, 375 S.E.2d at 695. Defendant's own testimony taken in the light most favorable to him indicates only that Mr. Whitaker "walk[ed]" towards him immediately prior to the shooting. No other witness testified that Mr. Whitaker moved towards defendant. The State's evidence presented at trial tended to show that at the time Mr. Whitaker was shot, Mr. Whitaker did not have a weapon and had not attempted to strike defendant, who was approximately six feet away. Upon cross-examination, defendant admitted that he had *never* seen Mr. Whitaker with a weapon of any type at any time. Defendant admitted that he (defendant) "could have kept walking up [Highway] 301" and could have avoided the scene of the Whitakers' argument where he eventually shot Mr. Whitaker. "In order for a defendant to be free from fault in causing the attack, he must not have provoked the affray by seeking out his victim." *State v. Lovell*, 93 N.C. App. 726, 728, 379 S.E.2d 101, 103 (1989) (citing *State v. Spaulding*, 298 N.C. 149, 257 S.E.2d 391 (1979) and *State v. Brooks*, 37 N.C. App. 206, 245 S.E.2d 564 (1978) ).

The evidence also showed that defendant shot Mr. Whitaker at least five or six times and continued to shoot Mr. Whitaker even after he had fallen to the ground after the first two shots.

Defendant's evidence that Mr. Whitaker had punched defendant two days earlier and had threatened to assault defendant earlier during the day of the shooting is not sufficient "to show that at the time of the shooting defendant was in actual or apparent danger of death or great bodily harm." *Kinney*, 92 N.C. App. at 676, 375 S.E.2d at 695 (victim's past physical abuse of defendant and victim's threat to beat defendant thirty minutes before shooting not sufficient to warrant self-defense instruction); *Hunter*, 315 N.C. 371, 338 S.E.2d 99 (1986). Nor are defendant's self-serving statements that he "was scared" and "was afraid that he [Mr. Whitaker] would try to do something to me" an adequate basis for an instruction on self-defense. "[T]hese self-serving statements do no more than indicate merely some vague and unspecified nervousness or fear; they do not amount to evidence that the defendant had formed any subjective belief that it was necessary to kill the [victim] in order to save himself from *death* or *great bodily harm.*" *Bush*, 307 N.C. 152, 159-60, 297 S.E.2d 563, 568 (1982) (emphasis in original). This assignment of error fails.

## II.

In his next three assignments of error, defendant argues that he was "deprived of his right to a fair trial by the trial court's failure to prevent cross-examination of the defendant and his witness [Mr. Pittman] designed to suggest that the defendant was a person of bad character and by the prosecutor's persistence in posing questions that implied prejudicial facts without regard to the witness' answers." We find no error.

[2] Defendant contends that the State's cross-examination of defendant and his witness, Mr. Pittman, regarding "[t]he events surrounding the defendant's gunshot wound . . . . was clearly an improper attempt to impeach both the defendant and Pittman as persons of bad, violent character" in violation of N.C.R. Evid. 608(b). We disagree. Through the testimony of two witnesses, *defendant* introduced evidence of the gunshot wound he had suffered two weeks earlier during an incident at which Mr. Pittman was present. In his brief, defendant admits that this evidence was introduced in an attempt to show "why he was in fear of serious bodily

injury from Stephen Whitaker at the time of the shooting [of Mr. Whitaker]." Our Supreme Court has stated:

> [T]he law wisely permits evidence not otherwise admissible to be offered to explain or rebut evidence elicited by the defendant himself. Where one party introduces evidence as to a particular fact or transaction, the other party is entitled to introduce evidence in explanation or rebuttal thereof, even though such latter evidence would be incompetent or irrelevant had it been offered initially.

*State v. Leroux*, 326 N.C. 368, 383, 390 S.E.2d 314, 324, *cert. denied*, 498 U.S. 871, 112 L.Ed.2d 155 (1990) (*quoting State v. Albert*, 303 N.C. 173, 177, 277 S.E.2d 439, 441 (1981) ). Accordingly, by introducing evidence of his own gunshot wound in his attempt to establish self-defense, defendant opened the door for the State's cross-examination concerning the events immediately surrounding defendant's gunshot wound.

The State's inquiry regarding the prior shooting of defendant was a proper attempt to explain, explore, or rebut defendant's proffered evidence. *Leroux*, 326 N.C. 368, 390 S.E.2d 314. During the State's cross-examination, defendant admitted *inter alia* he carried a revolver because of his fear of the man (not Mr. Whitaker) who shot him two weeks earlier. This admission helped to negate defendant's assertion of self-defense by rebutting defendant's earlier claim that he carried a revolver because of his fear of Mr. Whitaker. Even if the trial court may have erred by not sustaining defendant's objections to the form of the State's questions or to the admission of the subsequent testimony, it was harmless error. The evidence against the defendant is so overwhelming that we are not convinced that "had the error in question not been committed, a different result would have been reached at the trial." G.S. 15A-1443(a).

### III.

[3] Defendant contends that the trial court's instruction defining reasonable doubt was improper and warrants a new trial. We disagree.

Defendant requested the pattern jury instruction for reasonable doubt, N.C.P.I.—Crim. 101.10, and additional language from *State v. Riera*, 276 N.C. 361, 367, 172 S.E.2d 535, 539 (1970). The trial court denied defendant's request and gave the jury the following charge:

STATE v. WILLS

[110 N.C. App. 206 (1993)]

Now a reasonable doubt, members of the jury, means exactly what it says. It's not a mere, possible, academic, or a forced doubt because there are few things in human experience which are beyond a shadow of a doubt or beyond all doubt, nor is it a doubt suggested by the ingenuity of counsel, or even by your ingenuity of mind not legitimately warranted by the evidence and the testimony here in this case.

Your reason and your common sense should tell you that a doubt wouldn't be reasonable if it were founded upon or suggested by any of these type of considerations. A reasonable doubt is a sane sensible doubt, an honest substantial misgiving, one based on reason and common sense reasonably arising out of some or all of the evidence that has been presented or the lack of ' or insufficiency of that evidence as the case may be. Proof beyond a reasonable doubt is such proof that fully satisfies or entirely convinces you of the defendant's guilt.

Defendant argues that the above instruction constituted reversible error, thus entitling him to a new trial based upon the United States Supreme Court's decision in *Cage v. Louisiana*, 498 U.S. 39, 112 L.Ed.2d 339 (1990). In *Cage*, 498 U.S. at 40-41, 112 L.Ed.2d at 341-42, the United States Supreme Court noted the Louisiana trial court's instruction and commented as follows:

The instruction provided in relevant part:

"If you entertain a reasonable doubt as to any fact or element necessary to constitute the defendant's guilt, it is your duty to give him the benefit of that doubt and return a verdict of not guilty. Even where the evidence demonstrates a probability of guilt, if it does not establish such guilt beyond a reasonable doubt, you must acquit the accused. This doubt, however must be a reasonable one; that is one that is founded upon a real tangible substantial basis and not upon mere caprice and conjecture. *It must be such doubt as would give rise to a grave uncertainty*, raised in your mind by reasons of the unsatisfactory character of the evidence or lack thereof. A reasonable doubt is not a mere possible doubt. *It is an actual substantial doubt*. It is a doubt that a reasonable man can seriously entertain. What is required is not an absolute or

**STATE v. WILLS**

[110 N.C. App. 206 (1993)]

mathematical certainty, but a *moral certainty*. State v. Cage, 554 So 2d 39, 41 (La 1989) (emphasis added).

. . . . .

. . . The charge did at one point instruct that to convict, guilt must be found beyond a reasonable doubt; but it then equated a reasonable doubt with a "grave uncertainty" and an "actual substantial doubt," and stated that what was required was a "moral certainty" that the defendant was guilty. It is plain to us that the words "substantial" and "grave," as they are commonly understood, suggest a higher degree of doubt than is required for acquittal under the reasonable doubt standard. When those statements are then considered with the reference to "moral certainty," rather than evidentiary certainty, it becomes clear that a reasonable juror could have interpreted the instruction to allow a finding of guilt based on a degree of proof below that required by the Due Process Clause.

We find that the charge given in *Cage, supra*, is sufficiently distinguishable from the charge given here so as not to justify a new trial. *See Hudson*, 331 N.C. 122, 142, 415 S.E.2d 732, 742, *cert. denied*, --- U.S. ---, 122 L.Ed.2d 136, *rehr'g denied*, --- U.S. ---, 122 L.Ed.2d 776 (1992) (holding that trial court did not err in giving instruction that used the term "honest, substantial misgiving" but did not use "the combination of the terms found offensive by the *Cage* Court"); *State v. Montgomery*, 331 N.C. 559, 572, 417 S.E.2d 742, 749 (1992) (discussing the holding in *Hudson*, 331 N.C. 122, 415 S.E.2d 732, and stating that the instruction in *Hudson* "did not equate reasonable doubt with a 'moral certainty' "); *Estelle v. McGuire*, 502 U.S. ---, ---, 116 L.Ed.2d 385, 399 & n.4 (1991) (setting forth the standard of review as being " 'whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way' that violates the Constitution."). In the present case, reasonable doubt was not equated with a "grave uncertainty" or "actual substantial doubt" as in *Cage, supra*. In fact, here the trial court told the jury that "reasonable doubt . . . means exactly what it says." "[W]e repeat what this Court has said a number of times, 'The words "reasonable doubt" in themselves, are about as near self-explanatory as any explanation that can be made of them.' *State v. Wilcox*, 132 N.C. 1120, 1137, 44 S.E. 625, 631 (1903); *State v. Phillip*, 261 N.C. 263, 269, 134

S.E.2d 386, 391 (1964)." *State v. Ward*, 286 N.C. 304, 310, 210 S.E.2d 407, 412 (1974), *death sentence vacated*, 428 U.S. 903, 49 L.Ed.2d 1207 (1976).

Here, the trial court instructed the jury regarding the requirement of finding defendant's guilt based upon an evidentiary certainty rather than by a mere "moral certainty" as in *Cage, supra.* *See Montgomery*, 331 at 573, 417 S.E.2d at 750 (holding that trial court's reasonable doubt instruction violated the requirements of the Due Process Clause as interpreted in *Cage* where the trial court "joined its definition of a reasonable doubt as an 'honest, substantial misgiving' with a requirement that to convict the jury must be convinced to a 'moral certainty,' rather than to evidentiary certainty"). Furthermore, here the trial court stated that reasonable doubt was "one based on *reason* and common sense *reasonably* arising out of some or all of the *evidence* that has been presented or the lack of or insufficiency of that *evidence* as the case may be." (Emphasis added.) Accordingly, this assignment of error is overruled. Even so, we recommend the use of the pattern jury instruction on reasonable doubt. N.C.P.I.—Crim. 101.10. *See State v. Rogers*, 316 N.C. 203, 218, 341 S.E.2d 713, 722 (1986), *overruled on other grounds, State v. Vandiver*, 321 N.C. 570, 364 S.E.2d 373 (1988) (the North Carolina Pattern Jury Instructions for Criminal Cases adopt "the definition [of reasonable doubt] developed in our case law").

IV.

[4] Finally, defendant contends that "the trial court erred in failing to find a statutory mitigating factor established by uncontradicted evidence." We find no error.

Defendant contends that the trial court erred by not finding as a statutory mitigating factor pursuant to G.S. § 15A-1340.4(a)(2)(i) that "defendant acted under strong provocation, or the relationship between the defendant and the victim was otherwise extenuating, based on the evidence at trial of Whitaker's prior confrontations with the defendant and his prior assault of the defendant at a time when he knew that the defendant was injured and still recovering from a gunshot wound." "The trial court's failure to find a mitigating factor will not be overturned on appeal unless the evidence in support of the factor is uncontradicted, substantial, and there is no reason to doubt its credibility." *State v. Foster*, 101 N.C. App. 153, 159, 398 S.E.2d 664, 668 (1990) (*citing State v. Lane*,

77 N.C. App. 741, 336 S.E.2d 410 (1985) ). Given the lapse of time between the previous encounter between defendant and Mr. Whitaker and the time of the shooting and given the absence of any weapon on Mr. Whitaker's person at the time of the shooting, we conclude that uncontradicted evidence of strong provocation does not exist. *See State v. Highsmith*, 74 N.C. App. 96, 327 S.E.2d 628, *disc. review denied*, 314 N.C. 119, 332 S.E.2d 486 (1985). Accordingly, this assignment of error fails.

V.

For the reasons stated, we find no error.

No error.

Judges ORR and WYNN concur.