State v. Hugenberg

STATE OF NORTH CAROLINA v. PAUL B. HUGENBERG, JR.

No. 774SC268

(Filed 21 September 1977)

1. **Homicide § 20.1— photographs of victim—admissibility**

   The trial court in a homicide prosecution did not err in allowing into evidence photographs of the victim where the photographs were relevant to testimony concerning cause of death and wounds inflicted upon deceased.

2. **Homicide § 15— appearance of deceased—doctor's testimony—relevancy**

   The trial court in a homicide prosecution did not err in allowing a doctor to testify that he knew deceased personally, but that he did not recognize her after her death, since that testimony was relevant in describing the physical appearance of the body and was relevant concerning whether or not defendant had beaten the deceased extensively about the face.

3. **Homicide § 21.1— death by stabbing—sufficiency of evidence**

   Evidence was sufficient for the jury in a first degree murder prosecution where it tended to show that deceased was severely beaten and stabbed; deceased and defendant argued before the murder; defendant attempted to make the murder appear the work of a maniac; and defendant, while at the scene of the murder, repeatedly stated to an officer that he had killed his wife and that he had done so because of a doctor.

APPEAL by defendant from *Smith, Judge*. Judgment entered 20 October 1976 in Superior Court, ONSLOW County. Heard in the Court of Appeals 25 August 1977.

Defendant was charged in a bill of indictment with first degree murder of his wife. The State's evidence tended to show that at approximately 9:56 on the night of 30 March 1976, Deputy Barnes of the Onslow County Sheriff's Department discovered defendant as he emerged from a green Pinto automobile parked in the Onslow Recreation Park. Upon inquiry by Deputy Barnes, defendant at first denied any trouble but then he stopped the deputy's further investigation and stated to Deputy Barnes that he wanted to tell the truth, and that he had just killed his wife. Deputy Barnes found a butcher knife lying on the ground by the opened car door. Lieutenant McAvoy of the Sheriff's Department arrived, searched the wooded area where defendant indicated the deceased was, and discovered the body of Linda Hugenberg, defendant's wife. Defendant was advised of his rights. During this proceeding, defendant repeatedly stated to Deputy Barnes that he had killed his wife, that he had done it because of a doctor, and that he had three children at home.

Between the Pinto automobile and the body of the deceased were found the butcher knife, tissue paper, and various pieces of a pair of woman's slacks. In the right front floorboard of the automobile were some articles of male clothing with red stains on them. Dale Padgett, another deputy sheriff, arrived at defendant's house at approximately 12:00 p.m. He noticed what appeared to be bloodstains on the front porch of the house, on the carpets in the den and in the living room of the house.

David Hedgecock, a Forensic Serologist, testified that numerous bloodstains on various items found near the body where it lay in the woods and on the carpet from the den showed the same type blood as that of deceased.

Dr. Gable, County Medical Examiner, testified that in his medical opinion the deceased's hemorrhaging was due to some type of blow on the head that occurred before the stab wounds, that the cause of death was the stab wounds in the chest and back, and that the body of deceased was not moved significantly after the stab wounds were inflicted. He had recorded the time of death at about nine-forty-five p.m. on 30 March 1976.

Other witnesses for the State testified that the deceased and defendant had been out for the evening, that they had returned home about eight-thirty-five, that around nine-thirty-five or nine-forty, the Pinto automobile was parked near the front door of the house, and that a sister of the deceased had been unable to find either defendant or the deceased at home at nine-forty-five.

Testifying in his own behalf, defendant, a Captain in the United States Marine Corps, explained that on the evening of 30 March 1976, he and deceased went to Happy Hours and dinner at the Commissioned Officer's Mess; that they had dinner with a Captain and Mrs. Parker; and that during dinner deceased had an argument with Mrs. Parker. After dinner they went directly home. The deceased was angry that defendant had not taken her side in the argument with Mrs. Parker. She grew angrier with defendant, allegedly for additional reasons including what deceased had claimed was defendant's mistreatment of her child by a previous marriage. The argument worsened and at one point deceased threw an iron at defendant, and she also threatened him with a pair of scissors. Defendant retreated from his wife on several occasions, hoping she would calm down. Finally, in the den, deceased struck at defendant with her fists several times and defendant struck her. The deceased threatened to seek a divorce and stated that she had had sexual re-

lations with a doctor who practiced at the hospital where the deceased was employed as a nurse. An argument then began over who would have custody of the children. A few moments later, according to defendant, deceased came into the den, yelling that defendant would not get the children and "coming at . . . [him] with a butcher knife." She stumbled; a struggle ensued, and a mortal wound in the chest resulted.

Defendant, scared and confused, carried deceased to the Pinto car, returned to the house to get some clothes, and drove around until he came to the Onslow Recreation Area where he had planned to make the incident look like the work of a maniac. He then pulled the knife from his wife's chest, stabbed her in the back, and dragged her body into the woods. He tore some of deceased's clothes and scattered them around the area. He then returned to the body, pulled off her underpants, and tore them in two as well. After changing clothes defendant got back into the car and Deputy Barnes drove up.

Other evidence put on by the defendant tended to show that he had no criminal record, that he was an outstanding Marine Corps officer, and that he was trustworthy, conscientious, and mature.

The jury returned a verdict of guilty of murder in the second degree, and defendant was sentenced to fifty to sixty years imprisonment. Defendant appeals.

*Attorney General Edmisten, by Special Deputy Attorney General T. Buie Costen, for the State.*

*Bailey and Raynor, by Edward G. Bailey, for defendant appellant.*

ARNOLD, Judge.

Defendant makes five arguments covering ten assignments of error.

I.

[1] In the presentation of its evidence the State introduced photographs of the body of the deceased. Defendant contends that admission of these exhibits into evidence constitutes prejudicial error because the photographs portray such horrible and gruesome details that they serve no purpose except to inflame and prejudice the jury.

As defendant correctly points out, properly authenticated photographs of the body of a homicide victim may be introduced into

evidence under proper instructions limiting their use to that of illustrating a witness's testimony. *State v. Cutshall*, 278 N.C. 334, 180 S.E. 2d 745 (1971). So long as a photograph is relevant and material, the fact that it is gruesome or that it may otherwise arouse prejudice, will not alone render it inadmissible. 1 Stansbury's N.C. Evidence, § 34 (Brandis Rev. 1973). Evidence is relevant if it has any logical tendency, however slight, to prove some fact that is in issue; it is sometimes said to be material if it has some tendency to prove a fact and if its probative value is strong enough to overcome objections of confusion, unfair surprise, and unnecessary prolonging of trial. *State v. Brantley*, 84 N.C. 766 (1881); 1 Stansbury's N.C. Evidence § 77 (Brandis Rev. 1973). Applying these standards defendant's contentions are not tenable.

The State's theory in this case was that defendant knocked his wife unconscious at their home and drove her to the recreation area where he intentionally and with malice inflicted the fatal stab wounds. Defendant, on the other hand, contended that he had hit his wife only twice at home and that she had not been rendered unconscious by those blows. Further, he could not remember at trial whether he had beat her around the face when he attempted to make the incident appear as the work of a maniac. The first photograph showing the deceased's face was relevant and material to this conflict of contentions.

A second photograph introduced into evidence showed the chest wound of the victim, and it was relevant to Dr. Gable's testimony concerning the cause of death. Moreover, our Supreme Court has held that even where the photographs of the deceased were not necessary to the State's case no prejudice resulted from their admission into evidence. *State v. Westbrook*, 279 N.C. 18, 181 S.E. 2d 572 (1971); *State v. Cutshall, supra.*

## II.

[2] Defendant's second argument is that the court erred in overruling his objection to the following unsolicited testimony of Dr. Piver:

"I think it only fair to tell the jury that I have known Linda Hugenberg for some period of time. She was an emergency nurse and I had seen her almost on a daily basis in the emergency room. When I saw her that night, I did not recognize her."

Defendant's chief contention is that the testimony was irrelevant and highly prejudicial to the defendant. Again, we disagree.

Dr. Piver's statement was relevant in describing the physical appearance of the body. The State attempted to prove that defendant had beaten the victim at home and then had taken her to the park where he inflicted the fatal stab wounds. As defendant contends, the testimony implied that the body was beaten so badly that it could not be recognized. However, this was relevant concerning whether or not defendant had beaten the deceased extensively about the face.

### III.

[3] Defendant next argues that the court erred in overruling his motions for nonsuit. He asserts that there was insufficient evidence to show that he intentionally inflicted the wounds. We cannot agree.

Intent, a necessary element of murder in the second degree, is a mental attitude which can rarely be proved by direct evidence. It must ordinarily be proved by circumstances from which it can be inferred, *State v. Bell*, 285 N.C. 746, 208 S.E. 2d 506 (1974); in finding the element of intent, the jury may consider the acts and conduct of the defendant and the general circumstances existing at the time of the alleged crime. *State v. Norman*, 14 N.C. App. 394, 188 S.E. 2d 667 (1972).

While there may be other evidence from which a jury could infer intent, the testimony by Deputy Barnes that defendant, while at the recreation area, repeatedly stated that he had killed his wife, and that he had done so because of a doctor, is highly relevant. This testimony was uncontroverted. These statements by the defendant, together with evidence concerning defendant's conduct and the condition of the victim's body, are sufficient evidence from which the jury could infer intent.

### IV.

Defendant next contends that the court erred in allowing Dr. Gable to give a speculative answer to an improperly phrased question. We cannot review this purported assignment of error since, as the State points out, the record fails to disclose how the question was phrased. See App. R. 9(c)(1). However, we have considered the testimony which is the subject of the assignment of error and we find no prejudicial error.

### V.

Defendant's final argument is that the court incorrectly charged the jury on involuntary manslaughter. We find no error prejudicial to defendant, and in construing the full context of the

charge, *State v. Sanders*, 288 N.C. 285, 218 S.E. 2d 352 (1975), we find that if any incorrect statements were made they were later corrected by the trial court.

In defendant's trial we find

No error.

Judges PARKER and MARTIN concur.