STATE OF NORTH CAROLINA v. ROGER MOORE

No. 9318SC108

(Filed 17 August 1993)

**1. Indictment, Information, and Criminal Pleadings § 56 (NCI4th) — variance between indictment and proof — any error harmless**

Any variance between the indictment charging that defendant assaulted his victim with a butcher knife and the evidence showing that defendant assaulted his victim with a hammer was harmless error, since defendant was not con-

STATE v. MOORE

[111 N.C. App. 649 (1993)]

victed of assault with a deadly weapon with intent to kill inflicting serious injury, the offense charged in the indictment, but was instead convicted of the lesser offense of assault inflicting serious injury.

**Am Jur 2d, Indictments and Informations §§ 260-262.**

2. **Assault and Battery § 99 (NCI4th)— self-defense—sufficiency of evidence to require jury instruction**

The trial court erred in failing to instruct on self-defense where there was evidence tending to show that defendant and his wife were attempting to leave the victim's home when the victim charged at defendant with a hammer in his hand; during the ensuing altercation defendant was able to obtain control of the hammer and to use it to resist the victim's attack; and there was competent evidence in the record from which the jury could find that defendant was not the aggressor and that he used only the amount of force necessary, or that which appeared reasonably necessary, to repel the victim's attack.

**Am Jur 2d, Trial § 726 et seq.**

**Duty of trial court to instruct on self-defense, in absence of request by accused. 56 ALR2d 1170.**

Appeal by defendant from judgment entered 23 September 1992 by Judge Preston Cornelius in Guilford County Superior Court. Heard in the Court of Appeals 9 July 1993.

The State's evidence tended to show the following: Jerry Buchanan and Letha Hart were not living together on 2 February 1992 but had lived together on two previous occasions. On 2 February 1992 Mr. Buchanan visited Ms. Hart's home, where Ms. Hart, Mary Moore (Ms. Hart's sister), and defendant (Mary Moore's husband) were present. Mr. Buchanan and Ms. Hart had a brief argument, after which Mr. Buchanan returned to his apartment several blocks away. Shortly after arriving at his apartment, Mr. Buchanan received a call from Ms. Hart, who accused him of "seeing another woman."

Mr. Buchanan testified that later that evening Ms. Hart and Mrs. Moore came to his apartment. Willie Bridges, Mr. Buchanan's cousin, was present at Mr. Buchanan's home when Ms. Hart and Mrs. Moore arrived. Mr. Buchanan and Ms. Hart began arguing

again. During this confrontation, Ms. Hart threw a pot at Mr. Buchanan and then attacked him. At the same time Mrs. Moore attempted to "jump on" Mr. Bridges. Defendant arrived while the fight was in progress. After freeing himself from Ms. Hart's initial attack, Mr. Buchanan picked up a hammer, told his visitors to leave, and asked Mr. Bridges to call the police. As they left the house, Ms. Hart was in front of Mr. Buchanan and Mrs. Moore was behind Mr. Buchanan. As Mr. Buchanan walked out of the house, he felt a stinging sensation in his back. After he got outside, Mr. Buchanan placed the hammer on the ground beside his leg and accused Mrs. Moore of stabbing him. Defendant then grabbed the hammer and Mrs. Moore began hitting Mr. Buchanan in the face, back and head. Defendant then kicked Mr. Buchanan in the back and "beat" him with the hammer. After defendant struck him with the hammer, Mr. Buchanan was "completely out" for a few seconds. When Mr. Buchanan "came around," he went into his apartment and asked Mr. Bridges why he had not come outside to help.

Mr. Bridges testified that he was present when Ms. Hart and Mrs. Moore arrived at Mr. Buchanan's apartment. When Ms. Hart attacked Mr. Buchanan, Mr. Bridges picked up the phone to call the police, but Mrs. Moore prevented him from completing the call. When Mr. Buchanan, Ms. Hart, Mrs. Moore, and defendant went outside, Mr. Bridges then called the police. After calling the police, Mr. Bridges went to the front door, where he met Mr. Buchanan coming back inside. Mr. Bridges noticed that there was blood all over Mr. Buchanan and called an ambulance.

Defendant's evidence tended to show the following: On the evening of 2 February 1992 defendant was at Ms. Hart's home when Mr. Buchanan arrived. Defendant testified that approximately twenty-five minutes after Mr. Buchanan left, Ms. Hart and Mrs. Moore left together to take Mr. Buchanan's belongings to his apartment. Later, after being urged to do so by other guests, defendant went to Mr. Buchanan's apartment. When defendant arrived at Mr. Buchanan's apartment, he heard Mr. Buchanan arguing with Ms. Hart and Mrs. Moore. Defendant walked inside the apartment, shoved Mr. Buchanan and his wife (Mrs. Moore) into a chair, grabbed his wife by the hand, and pulled her outside. Defendant was almost at his car when Ms. Hart yelled, "Look out, Rog." Defendant turned around and saw Mr. Buchanan with a hammer in his hand. When Mr. Buchanan was not looking, defendant snatched the hammer

out of Mr. Buchanan's hand. Mr. Buchanan then grabbed defendant by the shirt and pulled defendant's head down. Defendant testified that he (defendant) began swinging the hammer in an attempt to get away from Mr. Buchanan. When defendant got loose, he and his wife got into his car and left. Defendant took the hammer with him. Ms. Hart got in her car and also left. Upon leaving, defendant saw Mr. Buchanan and Mr. Bridges "scuffling" in the front yard.

Mrs. Moore and Ms. Hart testified to substantially the same facts.

Defendant was convicted of assault inflicting serious injury and sentenced to two years imprisonment. The sentence was suspended and the defendant was placed on supervised probation for five years. As a special condition of probation, defendant was ordered to serve an active term of six months in the custody of the Sheriff of Guilford County. Defendant appeals.

*Attorney General Michael F. Easley, by Special Deputy Attorney General Lars F. Nance, for the State.*

*Assistant Public Defender Stanley Hammer for defendant-appellant.*

EAGLES, Judge.

Defendant brings forward six assignments of error. Assignment of error No. 5 is not brought forward and is deemed abandoned pursuant to N.C.R. App. P. 28(b)(5). After careful review, we reverse and remand for a new trial.

I.

[1] In his first assignment of error defendant argues that "the trial court erred in denying defendant's motions to dismiss as there was insufficient evidence that Roger Moore [defendant] stabbed Jerry Buchanan with a knife, as alleged in the indictment." We find no error.

The Guilford County grand jury indicted defendant for assault with a deadly weapon with intent to kill inflicting serious injury in violation of G.S. § 14-32(a). The indictment reads, ". . . the defendant named above unlawfully, willfully and feloniously did assault Jerry Buchanon [sic] with a butcher knife . . ." The evidence at trial tended to show that defendant assaulted Mr. Buchanan with

a hammer, not a butcher knife. Defendant contends that there was a fatal variance between the indictment and the proof requiring the trial court to grant defendant's motion to dismiss for insufficient evidence at the close of the State's evidence.

Here, the jury did not convict defendant of assault with a deadly weapon with intent to kill inflicting serious injury. Rather, the jury returned a verdict of guilty of the lesser offense of assault inflicting serious injury. G.S. § 14-33(b)(1). Accordingly, any error in the indictment charging the more serious offense is harmless.

II.

[2] In his third assignment of error, defendant argues "the trial court erred in refusing to instruct on defendant Roger Moore's right of self-defense." We agree.

Defendant timely requested the trial court to instruct the jury on defendant's right of self-defense. The trial court denied defendant's request.

The theory of self-defense entitles an individual to use "such force as is necessary or apparently necessary to save himself from death or great bodily harm. . . . A person may exercise such force if he believes it to be necessary and has reasonable grounds for such belief." *State v. Marsh*, 293 N.C. 353, 354, 237 S.E.2d 745, 747 (1977). Whether or not the belief was reasonable is a matter to be determined by the jury "from the facts and circumstances as they appeared to the accused at the time." *Id.* If an assault does not threaten death or great bodily harm, the victim of the assault may not use deadly force to protect himself from the assault. *State v. Hunter*, 315 N.C. 371, 338 S.E.2d 99 (1986). "The use of deadly force to prevent harm other than death or great bodily harm is therefore excessive as a matter of law." *Id.* at 373-74, 338 S.E.2d at 102. However, "[i]n the absence of an intent to kill, a person may fight in his own self-defense to protect himself from bodily harm or offensive physical contact, even though he is not put in actual or apparent danger of death or great bodily harm." *State v. Beaver*, 14 N.C. App. 459, 463, 188 S.E.2d 576, 579 (1972).

Our Supreme Court has held "when there is evidence from which it may be inferred that a defendant acted in self-defense, he is entitled to have this evidence considered by the jury under proper instruction from the court." *Marsh*, 293 N.C. at 354, 237 S.E.2d at 747. Therefore, we must determine if there is competent

STATE v. MOORE

[111 N.C. App. 649 (1993)]

evidence in this record from which it may be inferred that the defendant acted in self-defense.

In determining whether the self-defense instruction should have been given, "the facts are to be interpreted in the light most favorable to [the] defendant." *State v. Watkins*, 283 N.C. 504, 509, 196 S.E.2d 750, 754 (1973). *See also State v. Blackmon*, 38 N.C. App. 620, 622, 248 S.E.2d 456, 457 (1978); *disc. rev. denied*, 296 N.C. 412, 251 S.E.2d 471 (1979) ("When the defendant's evidence, even though contradicted by the State, raises an issue of self-defense, the failure of the trial court to charge on self-defense is error (citation omitted) . . . Whether the defendant's evidence is less credible than the State's evidence is an issue for the jury, not the trial judge."). Here, the defendant testified as follows:

A. [Defendant] As I was getting to the car, I was going to leave, and as I got to the car, then that's when my sister-in-law Letha, she said, "Look out, Rog." And when she did, I turned around.

Q. [Defense counsel] And what did you see?

A. I saw Mr. Buchanan with a hammer in his hand.

Q. And what, if anything, did he do?

A. Excuse me?

Q. What did he do?

A. He just kept coming. He didn't say anything. He just kept coming toward me with the hammer, so I had to back up. But all the time, I just kept my eyes on him and the hammer, 'cause I figured he'd hurt me, you know, if I let him get too close to me.

Mrs. Moore testified on direct examination as follows:

A. [Mrs. Moore] Me and Roger was already out of the house, going to the car. We were going to leave, and then that's when his cousin, Mr. Bridges, he yelled, "Jerry, don't do that. Jerry, don't do that." We was already out close towards the car.

Q. [Defense counsel] Did you hear him yell this?

A. Yes.

Q. Where was Mr. Buchanan when he [Mr. Bridges] yelled that; do you know?

A. He was coming out the door.

Q. Was he out the door before you heard Mr. Bridges yell?

A. Buchanan was on the front porch.

Q. Then what did he do next?

A. That's when he got out there, and he was charging at Roger with the hammer. . .

Ms. Hart testified on direct examination as follows:

A. [Ms. Hart] . . . We [Ms. Hart and Mr. Buchanan] stood there and we started talking. As Mary and Baldy [Defendant] was going outside towards the car, Jerry charged in the kitchen, up in his cabinet, and he came out with the hammer. That's when his cousin [Mr. Bridges] was shouting in the kitchen, "Please don't do it, please don't do it."

. . .

Q. [Defense counsel] Who was Willie [Mr. Bridges] talking to?

A. Willie was telling Jerry not to do it.

Q. Then what did Jerry do?

A. Jerry went up in there and got it anyway, and charged past me. He pushed me back. I tried to stop him. I told him to leave them alone, they was not bothering him, they were going on about their business. That was just what I told him.

Q. And what happened after that?

A. After then, that's when the fight connected out there. That's when everybody came close—I went out there and tried to stop it, but I couldn't get it stopped.

Additionally, during cross examination by the State, Ms. Hart testified that she "tried to stop Jerry [Mr. Buchanan] from charging after them."

This testimony, interpreted in the light most favorable to the defendant, *Watkins*, 283 N.C. at 509, 196 S.E.2d at 754, tends to show that defendant and his wife were attempting to leave Mr. Buchanan's home when Mr. Buchanan charged at defendant with

a hammer in his hand. During the ensuing altercation, defendant was able to obtain control of the hammer and to use it to resist Mr. Buchanan's attack. We conclude that there is competent evidence in this record from which the jury could find that defendant was not the aggressor, *Marsh*, 293 N.C. at 355, 237 S.E.2d at 747, and that defendant used only the amount of force necessary, or that which appeared reasonably necessary, to repel Mr. Buchanan's attack. *State v. Bush*, 307 N.C. 152, 297 S.E.2d 563 (1982). Accordingly, the trial court's failure to instruct the jury on self-defense constitutes prejudicial error to defendant and requires a new trial.

## III.

Since the case is being remanded for a new trial, we need not address defendant's remaining assignments of error.

For the reasons cited above, we find that the defendant did not receive a fair trial. Accordingly, the judgment of the trial court is reversed and this case is remanded for a new trial.

New trial.

Judges GREENE and LEWIS concur.