STATE OF NORTH CAROLINA v. DARRIUS CHARLES ANTON JACKSON

No. COA00-987

(Filed 17 July 2001)

### 1. Homicide— second-degree murder—voluntary manslaughter—motion for nonsuit

The trial court did not err by denying defendant's motion for nonsuit as to the charges of second-degree murder and the lesser included offense of voluntary manslaughter, because: (1) the State produced substantial evidence that defendant intentionally struck decedent with his automobile to satisfy the requisite element of intent in both second-degree murder and voluntary manslaughter; and (2) decedent's actions prior to the collision, defendant's statements to police following the collision, and the nature of the assault committed by defendant provide further evidence that defendant intentionally struck decedent with his automobile.

### 2. Homicide— jury instruction—self-defense

The trial court did not err in a second-degree murder case by refusing to instruct the jury on self-defense based on defendant's alleged fear for his own safety and the safety of his wife, because: (1) defendant's belief was not reasonable when the actual physical confrontation between defendant and decedent had ended, and defendant and his wife had retreated to the safety of their car; and (2) there was no evidence decedent posed any real immediate threat to defendant or his wife inside their vehicle when decedent made no movement toward defendant's vehicle prior to being struck.

Appeal by defendant from judgment entered 6 April 2000 by Judge W. Allen Cobb, Jr., in New Hanover County Superior Court. Heard in the Court of Appeals 6 June 2001.

STATE v. JACKSON

[145 N.C. App. 86 (2001)]

*Attorney General Michael F. Easley, by Special Deputy Attorney General Isaac T. Avery, III, and Assistant Attorney General Patricia A. Duffy, for the State.*

*Hosford and Hosford, P.L.L.C., by Sofie W. Hosford, for defendant appellant.*

McCULLOUGH, Judge.

On 4 March 1999, a jury convicted thirty-one-year-old Darrius Charles Anton Jackson (defendant) of voluntary manslaughter and nonfelonious hit and run in connection with the death of twenty-two-year-old Brian Melvin (decedent). The trial court sentenced defendant to a term of 64-86 months in prison on the voluntary manslaughter charge, and for an additional term of 45 days on the nonfelonious hit-and-run charge.

At trial, the State's evidence tended to show the following: On the evening of 2 March 1999, Wilmington Police Officer Leroy Cain responded to a reported fight on North 30th Street in the Creekwood Housing Development (Creekwood). Officer Cain arrived with his partner, Officer Alvin Wilson, only to find the area "fairly quiet." As the officers prepared to leave Creekwood, they noticed a group of about ten people "bunched up together" and "fighting" on the corner of Clayton Place and North 30th Street. Officers Cain and Wilson called for backup.

By the time the officers reached the crowd, it had grown to nearly fifty people, who were "yelling and screaming back and forth at each other." Officers managed to separate defendant, whose shirt had been ripped off, and decedent, both of whom had their fists up and were yelling at each other. While officers tended to the rest of the crowd, Ahmad Carr punched defendant in the back of the head. Officer Wilson brandished his pepper spray and ordered decedent to leave the area. The three officers advised the disorderly crowd that they could take out warrants if they wished and instructed them to leave and go their separate ways.

As the crowd began to disperse, Officer Cain observed decedent walking southbound on North 30th Street in the northbound lane of the road about four to six feet from the curb. Defendant walked in the opposite direction and headed northbound up North 30th Street. According to Officer Cain, decedent was walking slowly down the road when a red automobile struck him from behind. Officers Cain,

Shea, and Wilson observed the incident. Officers Cain and Shea estimated the vehicle was traveling between thirty and forty miles per hour in a twenty-five-mile-per-hour zone when it struck decedent. All three officers stated the vehicle did not swerve, did not brake, and did not slow down. Instead, the vehicle continued southbound on North 30th Street. Decedent was treated for a lethal brain injury until 3 March 1999 when doctors pronounced him brain dead. An autopsy later revealed decedent died as a result of blunt trauma to the head that produced massive skull fractures and bruising and swelling of the brain.

Officers Janice Bates and Amy Ward of the Wilmington Police Department testified they observed a red automobile stopped at the intersection of North 30th Street and Princess Place Drive. When the officers pulled in behind the vehicle, defendant and his wife stepped out of the car and approached the patrol car. While the officers detained the visibly upset couple, defendant stated, "I did it, I hit him. She had nothing to do with it."

Officer Thomas Witowski testified defendant appeared "upset" and "angry" when he first arrived at the Wilmington Police Department on the night of 2 March 1999. Officers Witkowski and Gronau advised defendant of his rights, and he agreed to answer any questions, giving both an oral and a written statement. In his written statement, defendant admitted that

> I then get in my car with my wife and leave the scene. [Decedent] gets in the middle of the street in front of my car. The police already have done nothing; and [decedent] already made a threat in front of them, and walks away, so I hit him and keep going. I wasn't going to stop to get jumped or get my car messed up. I then stopped at the light for the police.

At trial defendant testified on his own behalf. Defendant stated that on the evening of 2 March 1999, he, his wife, stepmother, and stepdaughters drove to Creekwood after receiving phone calls from his sister, Benee Cotton. Defendant's sister told defendant that someone assaulted two of his sisters, Pauline and Janese, and broke the car windows out of his sister Kathy's car. Defendant testified that, when he reached the area, he located Pauline among a crowd of people standing in the street. When defendant approached his sister, decedent emerged from behind the crowd and told defendant, "I'm the one who hit your sister." He then stated that if anybody wanted to do anything, "[t]hey've got to deal with me." Defendant recalled

handing his eyeglasses to Pauline before at least ten people, including decedent, attacked him physically, ripped his shirt off, and dragged him across the street. Defendant stated that, when officers arrived, decedent and the others ended their physical assault, but that decedent continued to intimidate and threaten him with words and gestures.

Defendant felt the situation was getting out of control when he and his wife finally left. Defendant was "upset" and "angry" while driving away from the crowded area. Defendant stated that he could not avoid striking decedent when he jumped into the path of defendant's automobile. Defendant said that, although he was not speeding, he did not have enough time to stop or swerve to avoid decedent. Defendant testified he did not know if decedent had a weapon, but thought decedent was trying to prevent him from leaving. Defendant stated he did not stop because "it was a hostile situation from beginning to end," and he thought if he stopped, his life or his wife's life could be threatened. Defendant eventually stopped at the intersection of North 30th Street and Princess Place Drive where he was apprehended by Officers Ward and Bates.

Defendant assigns as error the trial court's denial of his motion for nonsuit and the trial court's refusal to instruct the jury on self-defense. For the reasons set forth herein, we affirm the judgment of the trial court.

[1] Defendant's first assignment of error challenges the trial court's denial of his motion for nonsuit as to the charges of second-degree murder and the lesser included offense of voluntary manslaughter. "A motion to dismiss and a motion for nonsuit are equivalent." *State v. Lindsay*, 45 N.C. App. 514, 515, 263 S.E.2d 364, 365 (1980). In ruling upon defendant's motion to dismiss on the grounds of insufficient evidence, the trial court is required to interpret the evidence in the light most favorable to the State, drawing all reasonable inferences in the State's favor. *State v. Fletcher*, 301 N.C. 709, 712, 272 S.E.2d 859, 860 (1981). " 'The question for the court is whether substantial evidence—direct, circumstantial, or both—supports each element of the offense charged and defendant's perpetration of that offense.' " *State v. McCullers*, 341 N.C. 19, 29, 460 S.E.2d 163, 168 (1995) (quoting *State v. Abraham*, 338 N.C. 315, 328, 451 S.E.2d 131, 137 (1994) (quoting *State v. Rannels*, 333 N.C. 644, 659, 430 S.E.2d 254, 262 (1993))). The term "substantial evidence" simply means that the evidence must be existing and real, not just seeming or imaginary, and adequate to

support a conclusion. *State v. McAvoy*, 331 N.C. 583, 589, 417 S.E.2d 489, 493 (1992). "Whether evidence presented constitutes substantial evidence is a question of law for the court." *State v. Vause*, 328 N.C. 231, 236, 400 S.E.2d 57, 61 (1991).

Defendant argues there was insufficient evidence to show that he intentionally struck decedent with his automobile to satisfy the requisite element of intent in both second-degree murder and voluntary manslaughter. As a result, defendant contends he is entitled to a new trial in which the jury should consider only the offense of involuntary manslaughter. We disagree. "Murder in the second degree is the unlawful killing of a human being with malice, but without premeditation and deliberation." *State v. Foust*, 258 N.C. 453, 458, 128 S.E.2d 889, 892 (1963). Manslaughter is a lesser included offense of second-degree murder. *State v. Holcomb*, 295 N.C. 608, 613, 247 S.E.2d 888, 891 (1978). "Voluntary manslaughter is defined as 'the unlawful killing of a human being without malice, express or implied, and without premeditation and deliberation.'" *State v. McNeil*, 350 N.C. 657, 690, 518 S.E.2d 486, 506 (1999), *cert. denied*, 529 U.S. 1024, 146 L. Ed. 2d 321 (2000) (quoting *State v. Rinck*, 303 N.C. 551, 565, 280 S.E.2d 912, 923 (1981)). Generally, voluntary manslaughter occurs when one kills intentionally but does so in the heat of passion suddenly aroused by adequate provocation or in the exercise of self-defense where excessive force is used or defendant is the aggressor. *State v. Barts*, 316 N.C. 666, 692, 343 S.E.2d 828, 845 (1986).

"Neither second degree murder nor voluntary manslaughter has as an essential element an intent to kill." *State v. Ray*, 299 N.C. 151, 158, 261 S.E.2d 789, 794 (1980). "'[T]he expression, *intentional killing*, is not used in the sense that a specific intent *to kill* must be admitted or established.'" *State v. Phillips*, 264 N.C. 508, 515, 142 S.E.2d 337, 342 (1965) (emphasis in original) (quoting *State v. Gordon*, 241 N.C. 356, 359, 85 S.E.2d 322, 323 (1954)). Intentional killing refers to the fact that the *act* which resulted in death is intentionally committed and is an assault which in itself amounts to a felony or is likely to cause death or serious bodily injury. *Ray*, 299 N.C. at 158, 261 S.E.2d at 794.

Intent is a mental attitude which can rarely be proven by direct evidence, and must ordinarily be proven by circumstances from which it can be inferred. *State v. Hugenberg*, 34 N.C. App. 91, 95, 237 S.E.2d 327, 331, *disc. review denied*, 293 N.C. 591, 238 S.E.2d 151 (1977). In the instant case, the State produced substantial evidence that defendant intentionally struck decedent with his automobile to

satisfy the requisite element of intent in both second-degree murder and voluntary manslaughter. Officers Cain, Shea, and Wilson each testified that defendant was operating his vehicle at an excessive rate of speed on North 30th Street prior to striking decedent. Officers Cain and Shea testified that defendant made no attempt to swerve into the other lane to avoid hitting decedent. All three officers testified that defendant's vehicle did not brake or slow down either before it struck decedent or after the collision occurred. All three officers testified defendant's vehicle continued on North 30th Street after striking decedent until it was stopped at the intersection of North 30th Street and Princess Place Drive by another officer.

Decedent's actions prior to the collision, defendant's statements to police following the collision, and the nature of the assault committed by defendant provide further evidence that defendant intentionally struck decedent with his automobile. Officers Cain and Wilson testified that decedent was walking southbound on North 30th Street in the northbound lane several feet from the curb before he was struck from behind by defendant's vehicle. Both officers testified that decedent made no sudden movements toward the car prior to being struck. Following the collision, when defendant was apprehended at the intersection of North 30th Street and Princess Place Drive, defendant proclaimed to Officer Bates, "I did it, I hit him." In his written statement to police, defendant stated, "I hit him and [kept] going" because "I wasn't going to stop to get jumped or get my car messed up." Clearly, defendant used his vehicle as a deadly weapon and directly caused decedent's death by striking decedent from behind. The very nature of defendant's actions gives rise to the presumption that defendant intentionally struck decedent with his vehicle. Such an act can never be involuntary manslaughter because involuntary manslaughter involves commission of an act, whether intentional or not, which is *not* a felony nor likely to result in death or great bodily harm. *Ray*, 299 N.C. at 158, 261 S.E.2d at 794.

We conclude that the witnesses' testimony, defendant's written statement made to police following the collision, and the nature of the assault itself, when considered in the light most favorable to the State, constitutes sufficient evidence to adequately support the conclusion that defendant intentionally struck decedent with his vehicle. Defendant's first assignment of error is overruled.

[2] Defendant's second assignment of error challenges the trial court's refusal to instruct the jury on self-defense. "The right to kill in

self-defense is based on the necessity, real or reasonably apparent, of killing an unlawful aggressor to save oneself from *imminent* death or great bodily harm at his hands." *State v. Norman*, 324 N.C. 253, 259, 378 S.E.2d 8, 12 (1989) (emphasis in original).

The law of perfect self-defense excuses a killing altogether if, at the time of the killing, these four elements existed:

(1)  it appeared to defendant and he believed it to be necessary to kill the deceased in order to save himself from death or great bodily harm; and

(2)  defendant's belief was reasonable in that the circumstances as they appeared to him at the time were sufficient to create such a belief in the mind of a person of ordinary firmness; and

(3)  defendant was not the aggressor in bringing on the affray, *i.e.*, he did not aggressively and willingly enter into the fight without legal excuse or provocation; and

(4)  defendant did not use excessive force, *i.e.*, did not use more force than was necessary or reasonably appeared to him to be necessary under the circumstances to protect himself from death or great bodily harm.

*State v. Norris*, 303 N.C. 526, 530, 279 S.E.2d 570, 572-73 (1981). An imperfect right of self-defense is available to a defendant who reasonably believes it necessary to kill the deceased to save himself from death or great bodily harm even if defendant (1) might have brought on the difficulty without murderous intent, and (2) might have used excessive force. *State v. Mize*, 316 N.C. 48, 52, 340 S.E.2d 439, 441-42 (1986). "Although the culpability of a defendant who kills in the exercise of *imperfect* self-defense is reduced, such a defendant is *not justified* in the killing so as to be entitled to acquittal, but is guilty at least of voluntary manslaughter." *Norman*, 324 N.C. at 259-60, 378 S.E.2d at 12 (emphasis in original).

Defendant argues the jury should have received an instruction on self-defense because defendant feared for his own safety and the safety of his wife, and acted in self-defense when he drove through the angry crowd at Creekwood and struck decedent with his car. We disagree. The trial court has broad discretion in presenting issues to the jury. *State v. Flippin*, 280 N.C. 682, 687, 186 S.E.2d 917, 920 (1972). If no evidence exists in the record from which the jury could

STATE v. JACKSON

[145 N.C. App. 86 (2001)]

find that defendant reasonably believed it necessary to kill to protect himself from death or great bodily harm, then defendant is not entitled to an instruction on self-defense. *State v. Hughes*, 82 N.C. App. 724, 727, 348 S.E.2d 147, 150 (1986).

In determining whether a self-defense instruction should have been given, the facts must be interpreted in the light most favorable to defendant. *State v. Moore*, 111 N.C. App. 649, 654, 432 S.E.2d 887, 889 (1993). Assuming *arguendo* that defendant in fact formed the belief that it was necessary to kill decedent in order to protect himself and his wife, no basis exists for defendant to assert that his belief was reasonable. The actual physical confrontation that evening between defendant and decedent had ended, and defendant and his wife had retreated to the safety of their car in order to leave Creekwood. The crowd was disorderly and unruly, but defendant presented no evidence that showed the crowd itself posed any real, immediate threat to defendant or his wife inside their vehicle. In fact, defendant could have left Creekwood in another direction to avoid the crowd entirely, but instead made a U-turn on North 30th Street to drive southbound and leave in the direction of Princess Place Drive.

Any fear held by defendant of death or great bodily harm, at the time the killing took place, was entirely unreasonable under the circumstances. The State's evidence tended to show defendant struck decedent from behind as decedent was walking southbound on North 30th Street. Defendant's own written statement to police specifically described decedent as being "in the middle of the street" in front of defendant's car prior to the collision. At trial, defendant claimed decedent jumped from the crowd into the path of his car to prevent defendant from leaving. Even if decedent did in fact jump in front of defendant's vehicle, defendant testified he heard no gunshots prior to striking decedent, and observed no weapon in decedent's hands. According to testimony by Officers Cain and Wilson, decedent made no movement toward defendant's vehicle prior to being struck. No evidence presented by the State or defendant indicated that decedent posed any real, immediate threat to defendant or his wife inside their vehicle.

We conclude that the evidence taken in the light most favorable to defendant fails to support a finding that defendant formed a reasonable belief that it was necessary to kill decedent to protect himself or his wife from death or great bodily harm. Defendant cannot claim that at the time of the killing any real or reasonably apparent

necessity existed for defendant to protect himself or his wife from any threat of imminent death or great bodily harm at the hands of decedent. Defendant's second assignment of error is overruled.

For the foregoing reasons, we reject defendant's assignments of error and affirm the judgment of the trial court.

No error.

Judges WALKER and THOMAS concur.